633 So.2d 563 (1994)
Natale Lorenzo MONTOZZI, Appellant,
v.
STATE of Florida, Appellee.
No. 91-2929.
District Court of Appeal of Florida, Fourth District.
March 16, 1994.
*564 Richard L. Jorandby, Public Defender, Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joan Fowler, Asst. Atty. Gen., West Palm Beach, for appellee.
FARMER, Judge.
Defendant was tried before a jury and convicted of violating the RICO statute.[1] While he raises a number of points for our consideration, we address but one. He argues that the trial court committed reversible error when it refused to excuse a juror for cause. We disagree with the state and conclude that he has properly preserved this issue for our review. See Trotter v. State, 576 So.2d 691, 693 (Fla. 1990).
On the merits we reverse. The juror volunteered during voir dire that she had previously worked in a "boiler room" for a telephone solicitation company but had left for "ethical" reasons. The activities of her prior employer were not unlike those of the defendant on trial. Her reasons for leaving indicated her disapproval of the kind of activity involved. After defendant moved to disqualify this juror for cause, she was then further questioned by the prosecutor[2] as follows:
"[PROSECUTOR]: * * * Let me put it to you bluntly. Are there no circumstances under which you could be fair in hearing a case against somebody merely charged with operating a boiler room?
[JUROR]: I don't think I couldn't be fair. I think I might always have my doubts as to what I was hearing * * *." [e.s.]
[PROSECUTOR]: I mean there is something about the industry that is tainted in your mind. What is the basis for that?
[JUROR]: People that work for my company now who were in boiler rooms who had tremendous problems, either threatening phone calls, not getting paychecks themselves, even though they were in the industry and got out either before there was trouble or just as there was trouble." [sic]
When pressed by the prosecutor as to whether she could set aside her experience, be fair, and decide the case only on the evidence presented, she answered:
"Probably. I can't give a definite yes because I don't know how I am going to react when I hear it." [e.s.]
To this entirely qualified answer, the prosecutor responded as follows:
"[PROSECUTOR]: I respect your honesty, but I don't want to have a situation where the State of Florida, which is entitled to a fair trial too, I don't want to be in a situation where the State of Florida is deprived of an opportunity to have a fair witness [sic!] with good common sense merely because you are expressing some reservations based upon some experience that you have previously had. If you don't hear convincing evidence proving beyond a reasonable doubt that Mr. Montozzi is guilty, are you prepared to acquit him?" [e.s.]
Not surprisingly, the juror answered the prosecutor's undisguised reproach (Freudian slip showing) with the formal assurances he so obviously sought.
The trial judge himself then entered the fray. He explained that the verdict must be based on evidence heard in the courtroom and that, while everyone has some biases, jurors must set theirs aside. The following colloquy then ensued:
"[COURT]: Now the view that you are taking of evidence is tempered by your common sense and by the common sense you have developed over a lifetime of living but your verdict is based upon what is *565 presented here in court. Would you be able to follow that as the law of this case?
[JUROR]: Yes, sir.
[COURT]: Do you think you could sit fairly and impartially as a juror in this case?
[JUROR]: I would hope that I could, yes sir.
[COURT]: If the state does not prove its case beyond a reasonable doubt, would you have any hesitation at all in returning a verdict of not guilty?
[JUROR]: No, sir.
[COURT]: If the state does prove its case beyond a reasonable doubt to your satisfaction, would you have any hesitation in returning a verdict of guilty?
[JUROR]: No, sir."
Even the judge's attempts to salvage the juror also foundered on their own logic. In the context presented, a nonlawyer could easily perceive the question of fairness to be entirely separate and distinct from the concepts of bias and the use of one's common sense. Indeed, her responses indicate that her common sense was shaped by her experience in a boiler room, and that experience might lead her to process and understand the evidence in a manner different from one who had no such experience. In other words, she would likely interpret the evidence a certain way from her experience and, all the while, in her own mind seem to be fair and impartial. Moreover, her candid response to the prosecutor's question, as to whether the industry was "tainted", conclusively shows that she does think there is something amiss about such operations.
This court applies a "reasonable doubt" standard to juror disqualification questions: i.e., if there is a reasonable doubt about a juror's impartiality, then the juror should be dismissed for cause. Chapman v. State, 593 So.2d 605 (Fla. 4th DCA 1992). As a matter of law, this juror's candid admission about her experience and the feelings it had imprinted on her raised a reasonable doubt as to her ability to remain fair and impartial, as is constitutionally required. We have stated on a number of occasions that, rather than leave doubt as to a juror's impartiality, close cases should be resolved in favor of dismissing the juror. See, e.g., Sydleman v. Benson, 463 So.2d 533 (Fla. 4th DCA 1985).
While this is indeed an area of trial judge discretion, nevertheless we have ordered new trials ourselves where we were convinced of the existence of reasonable doubts. Chapman, 593 So.2d at 607; Street v. State, 592 So.2d 369 (Fla. 4th DCA), rev. denied, 599 So.2d 658 (Fla. 1992); Imbimbo v. State, 555 So.2d 954 (Fla. 4th DCA 1990). Qualified promises by a would-be juror to be fair and impartial are simply not enough to guarantee a fair trial, at least in the face of such prior testimony as this juror gave. Robinson v. State, 506 So.2d 1070, 1072 (Fla. 5th DCA 1987).
Efforts at rehabilitating a prospective juror should always be considered in light of what the juror had freely said before the salvage efforts began. The quite acceptable prosecutorial search for jurors who will be fair to the state sometimes seems to end up as a search for jurors who will convict, rather than jurors who will simply be fair.[3] Few jurors would resolutely continue to admit that they have a bias after having a prosecutor and a trial judge so cloak them in a duty to try to be fair. Some answers by prospective jurors should simply be deemed alone disqualifying, no matter how earnestly counsel and the trial judge seek to save them. In this case, the bell earlier rung by this juror was sounded again even while she was being "rehabilitated".
REVERSED FOR NEW TRIAL.
*566 GLICKSTEIN, J., concurs.
WILLIAM C. OWEN, Jr., Senior Judge, dissents with opinion.
WILLIAM C. OWEN, Jr., Senior Judge, dissenting.
The question of whether a venire member's responses during voir dire raise a reasonable doubt as to that person's ability to remain fair and impartial is properly a call within the trial court's discretion, Davis v. State, 461 So.2d 67 (Fla. 1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985), not to be overturned here absent a clear showing that such discretion was abused.
Even were it the appellate court's function to evaluate, on the cold record, a prospective juror's ability to remain fair and impartial, I would think the record here showed this prospective juror to be not only fair and impartial, but also very conscientious, a trait which caused the problem here. It was in response to a general inquiry by defense counsel as to whether any of the prospective jurors had any more information that they would want to offer that the juror disclosed her previous employment in a "boiler room." Upon further inquiry by defense counsel, the juror explained the type of activity in which her former employer was engaged, and then stated:
I really hesitated to bring that up because I can overlook all of that.
Defense counsel responded:
I believe you can.
The prosecutor was then permitted to question this juror further as to whether there were no circumstances under which she could be fair in hearing a case against somebody merely charged with operating a boiler room, to which the juror replied:
I don't think I couldn't be fair. I think I might always have my doubts as to what I was hearing.
The juror then acknowledged that she recognized that in this country there are perhaps thousands of legitimate companies that market a product or a service using a telephone, and that as a potential juror she would accept as a fact, until the prosecutor presented evidence to the contrary, that the business defendant was charged with operating was a perfectly legitimate one. There then followed the colloquy between the prosecutor and the prospective juror quoted in the majority opinion.
While the majority characterized the prospective juror's use of the words "probably" and "I would hope" as evidence of her equivocation, I see it as nothing more than her means of expressing, as many prospective jurors do, that no one knows in a vacuum, and in advance of hearing the evidence, what his or her reaction will be. For a prospective juror to respond that she would "hope" that she could be fair and impartial is simply a manner of speaking which, when made face-to-face, could just as readily be perceived as being unequivocal, as on the cold record, it is now perceived by the majority as being equivocal.
I would not call this a close case. I think the record shows without question that this prospective juror was neither hesitant nor equivocal and gave every assurance that she would be fair and impartial. The trial judge was satisfied of that fact and I think we should be also. I think that neither this issue nor the other points raised on appeal warrant a reversal, and I vote to affirm the judgment.
NOTES
[1] "RICO" is an acronym for Racketeer Influenced and Corrupt Organizations. See §§ 895.01-895.06, Fla. Stat. (1991).
[2] The prosecutor's patent desire to salvage this juror if at all possible was doubtlessly quickened by her earlier responses to general questioning by the trial judge in which she revealed that her husband had once been mugged and that she had a judge and a police officer for neighbors.
[3] Although, correspondingly, defense lawyers may similarly seem to search for jurors who will only acquit rather than simply be fair to the defendant, the role of the prosecutor in the criminal justice system is slightly different. While the state's attorney is undoubtedly an advocate for the state, in a larger sense the function of the prosecutor is more correctly to see that justice is done in an individual case rather than convicting a particular defendant. Even when the verdict is for the defendant, the State of Florida prevails, for the State "wins" (in the sense of the vindication of state law) when justice is done.