638 So.2d 976 (1994)
David Lee WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 92-3418.
District Court of Appeal of Florida, Fourth District.
June 8, 1994.
As Amended on Denial of Rehearing July 14, 1994.
*977 Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.
PARIENTE, Judge.
The defendant was convicted of delivery of cocaine and possession of drug paraphernalia. He asserts error occurred when a juror was not dismissed for cause after being timely challenged. The juror voluntarily expressed doubts about his impartiality during questioning by the defense counsel. The juror's subsequent responses to questions by the trial court were insufficient to overcome doubts as to his impartiality. Accordingly, we reverse.
During voir dire, the following exchange took place between the juror and defense counsel:
DEFENSE COUNSEL: Mr. Medina, you said that you have lots of contacts in the U.S. Attorney's Office, right? Its obviously law enforcement, its a fact that you have so many people who work in law enforcement. Do you think that would have any difficulty at all to do with your ability to sit as a juror and could be fair to David Williams?
JUROR: I would like to say I would, but if I was on trial and I had a juror who goes to dinner and goes out socially with lawyer's secretaries and lawyers and directors of personnel and in the heat of all these conversations we talk and my opinion they have theirs and I've never been on a trial like this, I've been on a civil case, so I never crossed that bridge. I would like to think that I could be impartial, but I also would like Mr. Williams to know that in this situation I have deep feelings in this kind of case because of you know my input, if you don't have the input of what I've gone through. Every dinner I have to tell everyone let's stop talking shop so its like every time we're together we're talking about trials, plea bargaining, the whole nine yards.
DEFENSE COUNSEL: Me too.
JUROR: I can't answer you honestly. I would like to think I could.

DEFENSE COUNSEL: Let me ask you this, I know you would like to believe you *978 could. From what I'm hearing it sounds like you have some apprehension, some hesitation about committing to David Williams that you would put aside any feelings you got from those dinners that you had and that you're not a hundred percent sure that you could be fair and impartial; is that a fair statement?
JUROR: (Nods head.)
(Emphasis added)
The trial court then asked a series of leading questions:
THE COURT: You wouldn't have any problem sitting there knowing you have to go back and face all those prosecutors?
JUROR: Right.
THE COURT: And knowing that they're going to give you, with all due respect, a lot of crap about it.
JUROR: I hold my own.
THE COURT: Alright. You could be fair and impartial is what you're telling us?
JUROR: I hope that I can.

THE COURT: Well, nobody can do more than that. If there's anydody (sic) that says a hundred percent they can be fair and impartial I tend not to believe them then says to me I'll do my best because there is something in my background that makes me lean more one way than another way.
JUROR: Okay, I look at it this way, I had to say something because I wasn't going to say anything.
THE COURT: You have to say it, I'm not chastising you for saying anything.
However, the juror next volunteered the following comment to the court:
JUROR: I'll be impartial because that's my character. If I kept it there I'm not being fair to Mr. Williams because I would think he would want a pure or slightly more pure attitude than I have. (Emphasis added)
Despite the juror's subsequent statement that "I'll be impartial because that's my character," he never expressed unequivocally that he could be fair and impartial in this case. He stated only that he hoped he could. See Montozzi v. State, 633 So.2d 563 (Fla. 4th DCA 1994). As a result, doubts raised by his initial statement that he had "deep feelings in this kind of case" were not subsequently removed. The juror advised the defense lawyer that, if he were the defendant, he would not be happy with himself on this jury. His final statement to the court that the defendant would want a juror with a "slightly more pure attitude" should have signalled that this juror had a continued concern with his ability to be impartial.
The right to an impartial jury is guaranteed by our constitution. The supreme court noted in Singer v. State, 109 So.2d 7, 15 (Fla. 1959):
As long as the Constitution of this State guarantees an accused trial by "an impartial jury" the people of this State through their government in all its branches at all levels and all the institutions fostered or permitted under it are solemnly bound to do that which is necessary to preserve such a trial to every accused, whether he be guilty or innocent.
To render the right to an impartial jury meaningful, cause challenges must be granted if there is a basis for any reasonable doubt as to the juror's ability to be fair. Moore v. State, 525 So.2d 870, 872 (Fla. 1988); Hill v. State, 477 So.2d 553 (Fla. 1985), cert. denied, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); Singer, 109 So.2d at 23; Chapman v. State, 593 So.2d 605 (Fla. 4th DCA 1992); King v. State, 622 So.2d 134 (Fla. 3d DCA 1993); Auriemme v. State, 501 So.2d 41 (Fla. 5th DCA 1986), rev. denied, 506 So.2d 1043 (Fla. 1987). Because impartiality of the finders of fact is an absolute prerequisite to our system of justice, we have adhered to the proposition that close cases involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the juror rather than leaving doubt as to impartiality. See Montozzi; Sydleman v. Benson, 463 So.2d 533 (Fla. 4th DCA 1985).
This juror vacillated between partiality and impartiality, having initially advised defense counsel of his "deep feelings in this kind of case" based on his numerous contacts in the U.S. Attorney's Office and in law enforcement. Commenting on the implications *979 of a juror's equivocation, the supreme court in Johnson v. Reynolds, 97 Fla. 591, 599, 121 So. 793, 796 (1929) observed:
It is difficult, if not impossible, to understand the reasoning which leads to the conclusion that a person stands free of bias or prejudice who having voluntarily and emphatically asserted its existence in his mind, in the next moment under skillful questioning declares his freedom from its influence. By what sort of principal is it to be determined that the last statement of the man is better and more worthy of belief than the former?
A juror's subsequent statements that he or she could be fair should not necessarily control the decision to excuse a juror for cause, when the juror has expressed genuine reservations about his or her preconceived opinions or attitudes. See, e.g., Graham v. State, 470 So.2d 97 (Fla. 1st DCA 1985). Reasonable doubt has been found where a juror admitted she "probably" would be prejudiced, even though she then asserted she "probably" could follow the judge's instructions. Imbimbo v. State, 555 So.2d 954 (Fla. 4th DCA 1990).
It was only after the court asked a series of questions, which included leading questions, that this juror asserted his belief that he hoped he could be fair and impartial. See Hagerman v. State, 613 So.2d 552 (Fla. 4th DCA 1993). A "juror who is being asked leading questions [by the court] is more likely to `please' the judge and give the rather obvious answers indicated by the leading questions... ." Price v. State, 538 So.2d 486, 489 (Fla. 3d DCA 1989); Hagerman. Thus, the juror's responses to questioning by the court must be evaluated in light of this reality. Certainly, "[i]t is difficult for any person to admit that he is incapable of being able to judge fairly and impartially." Singer, 109 So.2d at 24. It becomes even more difficult for a juror to admit partiality when the court conducts the questioning. Indeed, the juror in his own mind might even believe he could be "fair and impartial," but still interpret the evidence based on his own previously expressed "deep feelings in this kind of case." See Montozzi. We find the trial court's attempt to rehabilitate this juror to be insufficient. See King v. State, 622 So.2d 134 (Fla. 3d DCA 1993).
The juror here expressed initial unprompted doubts about his own ability to be unbiased in judging this case. These doubts were not removed by the court's subsequent questioning. This juror should have been dismissed. The failure to excuse the juror for cause constituted reversible error. It forced the defendant to exhaust his peremptory challenges on persons who should have been excused for cause, and therefore, had the effect of abridging the right to exercise peremptory challenges. See Trotter v. State, 576 So.2d 691 (Fla. 1990).
REVERSED AND REMANDED.
STEVENSON, J., concurs.
GUNTHER, J., dissents with opinion.
GUNTHER, Judge, dissenting.
I respectfully dissent.
Absent an abuse of discretion, the trial court's refusal to excuse a juror for cause should not be overturned. See Durocher v. State, 596 So.2d 997 (Fla. 1992); Singer v. State, 109 So.2d 7 (Fla. 1959). In my view, the trial court did not abuse its discretion in refusing to excuse juror Medina for cause. Therefore, I would affirm the conviction and sentence.
The majority opinion quotes the initial exchange between juror Medina and defense counsel and part of the questioning of Medina by the trial judge. Contrary to the impression created by the majority opinion, however, the questioning of Medina by the trial judge did not occur immediately following this initial exchange between defense counsel and Medina, but came after other jurors had been questioned  some fifteen pages later in the transcript  and during the time the trial court was hearing challenges to the various jurors. Thus, it was not a situation where the juror was first being grilled by lawyers and then immediately by the trial judge trying to extract a certain response from the juror.
After the defense attorney was in the process of challenging Medina for cause, the trial court conducted the following exchange:

*980 THE COURT: Mr. Medina, let me ask you a question. One of these nighst (sic) when you're out to dinner with all those people, prosecutors, whatever, all these people and you're sitting talking and they'e (sic) talking about all this stuff and you say by the way, let me tell you what happened to me a couple days ago I sat on a jury and I found a guy not guilty, what are they going to say about that?
MR. MEDINA: They will want to know more about the case.
THE COURT: Would you be able to say that to them?
MR. MEDINA: That I found a guy not guilty?
THE COURT: Yeah
MR. MEDINA: Sure.
THE COURT: You wouldn't have any problem sitting there knowing you have to go back and face all those prosecutors?
MR. MEDINA: Right.
THE COURT: And knowing that they're going to give you, with all do (sic) respect, a lot of crap about it?
MR. MEDINA: I hold my own.
THE COURT: All right. You could be fair and impartial is what you're telling us?
MR. MEDINA: I hope that I can.
THE COURT: Well, nobody can do more than that. If there's anydody (sic) that says a hundred percent they can be fair and impartial I tend not to believe them then says to me I'll do my best because there is something in my background that makes me lean more one way than another way.
MR. MEDINA: Okay, I look at it this way, I had to say something because I wasn't going to say anything.
THE COURT: You have to say it, I'm not chastising you for saying anything.
MR. MEDINA: I'll be impartial because that's my character. If I kept it there I'm not being fair to Mr. Williams because I would think he would want a pure or slightly more pure attitude than I have.
THE COURT: What he will have to do is bring in everybody after they're born because that's the only time you're pure.
MR. MEDINA: I'm not going that far back. I think you understand my opinion. I wanted to bring it out, that's all.
THE COURT: Can you leave it all outside and just listen to the facts of this case as they're presented and apply the law to the facts leaving all that other stuff outside?
MR. MEDINA: (Nods head.)
THE COURT: You can't leave your common sense outside and you can't leave your life experiences outside.
MR. MEDINA: I believe I could.
THE COURT: Okay. Do you have any questions?
MR. HAAS: No sir.
THE COURT: Okay. Thanks a lot. Don't discuss this with anyone out there, please.
The complete exchange between the trial court, the juror and defense counsel reveals the context of the statements relied on by the majority to support their view that the trial court abused its discretion in denying a challenge for cause as to juror Medina. Although the statements set forth in the majority opinion would at first blush seem to support their analysis of the issue in dispute, I believe it is essential to consider the context of the statements to understand what could have reasonably influenced the trial judge to conclude Medina could be a fair and impartial juror in this case.
The questioning of Medina, taken as a whole, shows that juror Medina was trying to anticipate what the defense counsel might want to know about him. It is obvious that Medina conscientiously wanted to reveal to the attorney facts Medina thought the attorney might think were significant. The effect of these statements by Medina created a question about his impartiality. But later in the exchange juror Medina made several statements that can reasonably be interpreted as expressing his intention to be a fair and impartial juror.
Although it is permissible for a trial court or attorneys to attempt to rehabilitate a juror who appears not to be impartial by asking leading questions about the juror's ability to follow the law, in this case, contrary to the majority's opinion, the trial court's questions *981 were not leading. King v. State, 622 So.2d 134 (Fla. 3d DCA 1993). In my view, the trial court's questions do not suggest any obvious answers but rather are a neutral attempt by the trial court to discern whether juror Medina could be a fair and impartial juror. Mr. Medina's statement that "I'll be impartial because that's my character" can be reasonably construed in this context as meaning "I'll be impartial in this case because that's my character." Juror Medina's next statement that "if I kept it there I'm not being fair to Mr. Williams because I would think he would want a pure or slightly more pure attitude than I have," could be reasonably interpreted in the context of the questioning as evidencing juror Medina's desire to be honest and candid with the lawyers and the trial court. Nothing in Medina's conscientious responses indicated that his opinions were of a fixed or settled nature as to not readily yield to the evidence. See Hill v. State, 477 So.2d 553 (Fla. 1985). Nor was his spontaneous comment that he would be impartial in any way an equivocation as to his ability to be fair and impartial. Moreover, this is not a case where the juror was having difficulty admitting partiality when the court conducted the questioning. On the contrary, the juror volunteered information without prompting by the court. Nor was there anything about Medina's responses to the trial court's questions that could be fairly characterized as answers attempting to "please" the judge or as a "qualified promise" to be a fair and impartial juror such as occurred in Montozzi v. State, 633 So.2d 563 (Fla. 4th DCA 1994). Accordingly, I disagree with the majority's statement that it was only after the trial court asked a series of questions, including leading questions, that Medina asserted his impartiality. Thus, I disagree with the majority's conclusion that Medina's responses to questions by the trial court were not enough to overcome any doubts as to Medina's impartiality.
The standard of review applicable to this case is whether the trial court abused its discretion in refusing to excuse juror Medina for cause. Montozzi, 633 So.2d at 565. I do not think it can be said that no reasonable person could have ruled as the trial judge did based on the facts of this case. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). Accordingly, I would affirm the trial judge because in exercising his discretion, the judge could have reasonably concluded that Medina's responses indicated that he could be a fair and impartial juror.