GERSTEN, J.
Terrance Luther James, (“defendant”), appeals his conviction on armed robbery and aggravated assault charges. We reverse and remand for a new trial.
The twenty-seven year old defendant was accused of robbing a man at gunpoint. During jury selection, a prospective juror, Mr. Parker, stated:
I grew up in this community. And I am angry that young thugs have perpetrated their violence on society with their smirks and arrogance and I think that is the system the defense attorneys or whatever is protecting us, the tax paying citizen from these young thugs that are preying on our grandparents, our parents, and our children. And I am very upset about it. Whether this defendant is innocent or guilty, that remains to be seen, but that’s my ...
After the prosecutor asked him if he could, nonetheless, be impartial in evaluating the evidence of guilt, Parker replied:
My only predisposition is that if I think the person is guilty, I want to throw the book at him and slam him with every possible penalty that the law can protect citizens of this community ...
Parker later stated that he could be impartial in evaluating the evidence.
Defense counsel then questioned Parker about his “young thugs” comment. Parker responded:
As a member of the community, as an employer, as a taxpayer, as a person who is active in this community, and active in civic, social endeavors, I hear what my fellow citizens are discussing, what they are concerned about. And I would say that the crime hold ups with these pistols and youth upon the rest of society has heightened the state of tension. And for you not to realize that, you would have to be an ostrich.[1]
Haying exhausted all of his peremptory strikes, the defendant moved to excuse Parker for cause. The trial court denied the motion on the ground that Parker’s comments were conditioned on his finding the defendant guilty, and that they did not indicate an inability to be impartial in evaluating the evidence. The defendant then moved for an additional peremptory strike. The trial court denied the additional challenge and seated Parker on the jury. The defendant was subsequently convicted as charged.
In order to demonstrate reversible error, the defendant must show that he used all of his peremptory challenges, made a request for additional perempto-ries, that the request was denied, and that an objectionable juror was seated on the jury. See Trotter v. State, 576 So.2d 691 (Fla.1990); Hall v. State, 682 So.2d 208 (Fla. 3d DCA 1996). If a prospective juror’s statements raise a reasonable doubt regarding his ability to be impartial, the prospective juror should be excused. See Turner v. State, 645 So.2d 444 (Fla.1994); Lusk v. State, 446 So.2d 1088 (Fla.1984); Singer v. State, 109 So.2d 7 (Fla.1959). Close cases involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the potential juror rather than leaving doubt as to a panel member’s impartiality. See Goldenberg v. Regional Import and Export Trucking Co., Inc., 674 So.2d 761 (Fla. 4th DCA 1996); Montozzi v. State, 633 So.2d 563 (Fla. 4th DCA 1994).
*783 Even though potential juror Parker did not admit direct bias, his comments raised an objective doubt concerning potential bias. We are disturbed by Parker’s “young thugs” and “youth” comments, which could easily be perceived as being aimed directly at the defendant, who is considerably younger, than Parker. At the very least, the comments indicate a degree of paranoia regarding persons in the defendant’s age bracket and this particular criminal charge. We are also disturbed by Parker’s animosity toward criminal defense attorneys as evidenced by his displaced and incorrect blame on the defense bar for many of society’s ills.
We are aware, however, that this very hard working trial judge was laboring under the pressure of trial management. We, unlike the trial court, pressurelessly, as though sitting back-to-back on a promontory, can view the record calmly and dispassionately. In viewing the record, we can engage in an elegantly simple test: Would we, if we were in the defendant’s shoes, want this person to sit in judgment of us? Clearly not. Therefore, because the cumulative effect of Mr. Parker’s comments raise a reasonable doubt concerning his ability to be impartial, it was manifest error to deny the defendant’s challenge for cause. See Gill v. State, 683 So.2d 158 (Fla. 3d DCA 1996); Farias v. State, 540 So.2d 201 (Fla. 3d DCA 1989).
Accordingly, the defendant’s conviction is reversed and the case is remanded for a new trial.
Reversed and remanded.

. Apparently referring to the belief that ostriches bury their heads in the sand. This belief may be attributable to the lineage of the Prince of Wales. Since 1301, the Prince of Wales has been symbolized by a crest comprised of three silver ostrich feathers, which was first displayed in the battle of Crecy by Edward, The Black Prince. In the years spanning from 1625 to 1649, the monarchy, under the reign of Charles I and Henrietta, was highly criticized for ignoring the emerging representative system of government. See generally Gorton's Biographical Dictionary, Vol. I, Whittaker and Co., London (1841).