931 So.2d 1034 (2006)
Andre Leon LEWIS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-1958.
District Court of Appeal of Florida, Fourth District.
June 21, 2006.
Rehearing Denied July 20, 2006.
*1035 Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Mark J. Hamel, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Andre Lewis appeals his conviction and sentence for possession of cocaine. We reverse, because the trial court erroneously denied Lewis's cause challenge to a potential juror.
Lewis was charged by information with possession of cocaine with intent to deliver or sell. During jury voir dire, prospective juror Castro requested a private conference with the court, during which the following colloquy took place:
Prospective Juror Castro: Basically, I figured I should be honest. A family member is a member of the drug enforcement unit.
The Court: Okay.
Prospective Juror Castro: Secondly 
The Court: How close a family member?
Prospective Juror Castro: He's a nephew. And on the other hand, my half brother was a drug addict for many, many years and I still feel and see what it did to him, what our family went through and luckily now he's a pastor. So, I don't know. Maybe when he hit bottom.

*1036 But for so many years we suffered so much because of this. And I don't know if that would in any way affect my decision either way. And I just wanted to tell you.
The Court: That's what we really need to know from you. A lot of folks have had family members who have had drug problems in the past or who currently have drug problems. That's a fairly common occurrence in our society today.
So the real question becomes can you put that aside and listen to the evidence here in the courtroom and base your verdict solely on the evidence and the law that I give you?
Prospective Juror Castro: That's really  I don't know. I just wanted to be fair and tell you  tell you all 
The Court: Okay.
Prospective Juror Castro: (continuing)  before  because I know it's going to be hard for me either way.
The Court: Well, you kind of got it on both sides. And a lot of  you'd be surprised at how many people that come in here are in the  are on a somewhat similar situation as you are. They may have family members that had drug problems.
On the other hand, they might have someone in their family that is in law enforcement or they might not be.
. . . .
So the question becomes, since you have these different competing interests in your family, or differing personal experiences, will you still be able to come in here and listen to the testimony and make a decision based upon the testimony that you hear and see and the law that I give you? Do you think you can do that?
Prospective Juror Castro: I  I 
. . . .
The Court: I'm not sure what your hesitation is. A lot of people don't want to be on jury service because they know it will be hard for them to do, and it's hard for most people, so I'd never get a jury if I let everybody go, just because it's a hard thing to do.
Prospective Juror Castro: I understand.
The Court: Are you telling me that this is something hard for you to do, difficult?
Prospective Juror Castro: I believe. I believe it would be.
The Court: Okay.
. . . .
Prospective Juror Castro: I figured I'd rather say it now than hold it in. And I don't even know how I'm going to react if I have to serve as a juror. It would be up to  up to them to decide whether or not they want me as part  as part of the group.
But I wanted to be honest to both of them.
The Court: We appreciate that. And it's good you brought it up. So now you really have to search your sole [sic] and your mind.
Prospective Juror Castro: Right.
The Court: So these lawyers can be sure that you can give them both a fair shake, give them both a fair trial, the State and the defense. That's what it all boils down to, are you going to give them a fair trial?
Prospective Juror Castro: I would say yes.
The Court: All right. Mr. Semenick.
Mr. Semenick: I won't ask you to decide the case now because you haven't heard any of the facts, but after you've heard the facts, putting everything else aside, *1037 you can render a fair and impartial verdict?
Prospective Juror Castro: I hope I can, under everything that is presented, and make a fair decision.
Mr. Semenick: Nothing further.
Ms. Russell-Love: Mr. Castro, what you shared with us, you actually mentioned the turmoil that your family faced because of the  because of a relative.
Prospective Juror Castro: Half brother, yes.
The Court: Your half brother. And I imagine you told us about that turmoil because it effects [sic] you even now; is that accurate?
Prospective Juror Castro: Correct. Correct.
Ms. Russell-Love: Okay. In light of the fact that it affects you in the way that it does, do you think that you would be able to be fair and impartial in a case of this nature?
Prospective Juror Castro: Not if it's involving drugs, really.
Ms. Russell-Love: We're not going to judge you, we just want to know honestly.
Prospective Juror Castro: I want to be fair. I just answered from my heart. I don't want to say one way or the other, because I think it would affect me.
Ms. Russell Love: Okay. So you're saying you cannot be fair and impartial?
Prospective Juror Castro: I don't think so. Yeah.
The following day, the court questioned Castro again:
The Court: Yesterday we talked about your stepbrother  stepbrother  right  who had a drug problem. Then you've got what, a brother who's a DEA agent?
Prospective Juror Castro: Nephew.
. . . .
The Court: So yesterday, when we talked, you sort of had  part of you, for lack of a better term, might look as though it's pro defense and the other part of you might look as though it's pro State.
So, what we need to do is make sure that you can set any of your family issues aside and that you can be fair and impartial to both sides. So, you probably had some chance to think about that overnight?
Prospective Juror Castro: Yes, I did.
The Court: And what do you think?
Prospective Juror Castro: I think it really would be very difficult for me to make a fair decision.
The Court: Well 
Prospective Juror Castro: I really do.
The Court: It's always difficult for jurors to do their job. And something being difficult is not an adequate reason to strike someone from a jury, because some decisions are, indeed, very difficult.
And sometimes the person who realizes that this is an extremely difficult decision to make, sometimes those are your best jurors, because they really want to give this case all the attention that it deserves and they want to be very careful about their decision. They want to weigh all the witnesses, they want to decide whether the witnesses are telling the truth, all, partially, none, what evidence they give the most weight to, and they end up being extremely conscientious jurors.
So, the fact that it's difficult for you is not sufficient for me to say okay, I'm going to let you go, because, as I say, those sometimes make your best jurors. It's not whether it's going to be difficult for you, because it's difficult usually for *1038 everybody. That's a very difficult decision to be made.
The question is if you can be fair to both sides and give both sides an equal shot. You know, can you decide this without worrying about what your DEA nephew might say to you, or without worrying about what your family might say?
Can you make a decision based on the facts and the law, as you hear and see in this courtroom? What do you think about that?
Prospective Juror Castro: Well, my main  my main feeling, basically, is not what my family might say or may not say, but what I feel about what happened to my brother because he got into drugs.
It's not that I'm worried about what my nephew may say, whether or not I'm with or against anything 
The Court: Uh-huh.
Prospective Juror Castro: (continuing)  or what my family may think of my decision in any kind of a situation. But it's just the way I feel, what I went through not being able to help him when he was on drugs.
The fact he got into drugs, he lost his job, family, life, everything was separated, so everything went to pieces really.
And just the thought of  don't get me wrong, again, when someone is not proven guilty yet, I don't want to make any judgment in any way, but it would be very hard for me to make a decision of acquittal if I feel he's guilty. It would be very hard for me to say, you know, he may continue doing the same thing, ruining someone else's life if he's ever convicted.
The State: Supposing the State don't prove their case, suppose they don't prove it, will you be able to acquit him?
Prospective Juror Castro: They would not prove? Of course.
The Court: All right. And if they prove their case, will you be able to convict him?
Prospective Juror Castro: Yes, I would have no choice.
The Court: And you would have no choice, either, if they didn't convict  if they didn't prove the case?
Prospective Juror Castro: Right.
The Court: Same thing?
Prospective Juror Castro: Yes.
The Court: Miss Love.
Ms. Russell-Love: Mr. Castro, you've demonstrated that you clearly understand everything the Judge has said to you. You clearly understand the rule, which is, if they don't proof [sic] their case you have to go one way, if they do prove their case you go the other way, so it's clear you understand all of that?
Prospective Juror Castro: Yes.
Ms. Russell-Love: Despite that, it's been two days. You were here yesterday and you're here today. Can you tell us whether or not you can be fair or impartial? We need a yes or no.
Prospective Juror Castro: I would say yes.
Ms. Russell-Love: You think you can, despite everything that you just said.
All right. You're telling us that you can be fair and impartial despite what happened to your brother, despite the feelings for the charge my client has been charged with?
. . . .
Prospective Juror Castro: If I feel there's not enough proof against the gentleman, I would have to acquit. I would not be able to convict him if it's not proven to my satisfaction and to the satisfaction of the Court.
*1039 The court denied the defense's motion to strike Castro for cause. The defense then used a peremptory challenge to strike Castro. Thereafter, the defense requested an additional peremptory challenge to strike another juror, which request was denied.
We review a trial court's decision to deny a cause challenge for an abuse of discretion. Carratelli v. State, 832 So.2d 850, 854 (Fla. 4th DCA 2002). A trial court's decision regarding a challenge to a juror will not be disturbed on appeal absent manifest error. Singer v. State, 109 So.2d 7, 22 (Fla.1959); see also Peters v. State, 874 So.2d 677, 679 (Fla. 4th DCA 2004) ("While the decision to accept or dismiss a putative juror is considered an exercise in discretion, we view the seating of a juror as to whom there is a reasonable doubt concerning impartiality an abuse of discretion and thus `manifest error.'").
"The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Jenkins v. State, 824 So.2d 977, 980 (Fla. 4th DCA 2002) (quoting Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984)). If there is any reasonable doubt about a juror's impartiality, that juror must be excused for cause. Carratelli, 832 So.2d at 854. "[C]lose cases should be resolved in favor of excusing the juror rather than leaving a doubt about the juror's impartiality." Peters, 874 So.2d at 679.
A juror who initially expresses bias may be rehabilitated during the course of questioning. Nevertheless, doubts raised by initial statements are not necessarily dispelled simply because a juror later acquiesces and states that he can be fair. Carratelli, 832 So.2d at 854. We have cautioned:
It is difficult, if not impossible, to understand the reasoning which leads to the conclusion that a person stands free of bias or prejudice who having voluntarily and emphatically asserted its existence in his mind, in the next moment under skillful questioning declares his freedom from its influence. By what sort of principles is it to be determined that the last statement of the man is better and more worthy of belief than the former?
Id. (quoting Johnson v. Reynolds, 97 Fla. 591, 599, 121 So. 793, 796 (1929)).
To determine if a juror has dispelled all reasonable doubts about impartiality, a reviewing court must look at the entirety of the juror's voir dire. Scott v. State, 825 So.2d 1067, 1070 (Fla. 4th DCA 2002). "Efforts at rehabilitating a prospective juror should always be considered in light of what the juror had freely said before the salvage efforts began." Montozzi v. State, 633 So.2d 563, 565 (Fla. 4th DCA 1994); see also Singer, 109 So.2d at 24 ("[A] juror's statement that he can and will return a verdict according to the evidence submitted and the law announced at the trial is not determinative of his competence, if it appears from other statements made by him of [sic] from other evidence that he is not possessed of a state of mind which will enable him to do so.").
After reviewing the entire exchange between the court, the attorneys, and Castro, we find that the court committed manifest error by refusing to dismiss Castro for cause. Castro explained to the court that his half brother was a drug addict and that this had a great impact on his family. Thus, he did not know whether he could base his verdict solely on the evidence and the law. The court asked Castro if he could "give them [the lawyers] a fair shake, give them both a fair trial," to which Castro responded, "I would say yes." Later, however, defense counsel *1040 asked him: "In light of the fact that it affects you in the way that it does, do you think that you would be able to be fair and impartial in a case of this nature?" The juror responded that he could not "if it's involving drugs."
Castro was brought back for additional questioning the following day. At the outset, he again stated, "I think it really would be very difficult for me to make a fair decision." The court engaged in a lengthy monologue concerning the difficulty posed to jurors in general in reaching verdicts. Castro responded, "it would be very hard for me to make a decision of acquittal if I feel he's guilty. It would be very hard for me to say, you know, he may continue doing the same thing." Castro then recanted, stating that if the state did not prove its case, then he would have to acquit the defendant. In response to defense counsel's question of whether he would be fair and impartial, Castro replied that he would be.
Based on the voir dire transcript, we conclude that there remained a reasonable doubt about Castro's ability to be fair and impartial. The court attempted to rehabilitate Castro by explaining that jury service is difficult for all jurors. However, Castro appeared to equate "difficulty in making a decision" with "ability to be fair and impartial." Indeed, Castro stated that he would have difficulty reaching a decision because he doubted his ability to be fair, under the circumstances. Although Castro acquiesced and stated that he could be fair, given his strong statements the previous day and his statement at the beginning of questioning on the second day that he doubted his ability to be fair, we cannot find that his later statements dispelled doubts.
We therefore reverse appellant's conviction and sentence. Because we are reversing for a new trial, we see no need to address appellant's remaining points on appeal.
Reversed and Remanded for new trial.
GUNTHER and KLEIN, JJ., concur.