DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RUBEN ISRAEL RENTAS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-533

[January 10, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Dina A. Keever, Judge; L.T. Case No. 502012CF006211A.

Carey Haughwout, Public Defender, and Karen Ehrlich, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

KLINGENSMITH, J.

Appellant Ruben Israel Rentas appeals his criminal convictions for two counts of sexual activity with a child, two counts of lewd or lascivious molestation of a child over the age of twelve but under the age of sixteen, one count of lewd or lascivious molestation of a child under the age of twelve, one count of sexual performance by a child, and one count of showing obscene material to a child. He claims the trial court erred in denying cause challenges to two prospective jurors based on statements raising doubts as to their impartiality. He also argues that the trial court erred by permitting the jury to rehear a portion of the minor victim's testimony without also rehearing the corresponding cross-examination. We agree on both issues, and grant appellant's request for a new trial.

Part of appellant's defense theory was that he gave a false confession. During voir dire, defense counsel asked the prospective jurors, "Do you believe people confess to crimes they did not commit?" The first three jurors to answer each stated they believed that under certain conditions, false confessions could occur. The fourth prospective juror to speak on the issue, Juror 1-5, stated that he did not believe a person would falsely

confess to committing such a serious offense and that the validity of an involuntary confession was contingent on the severity of the alleged crime. He explained, "If the person is accused of a serious crime, I seriously doubt that they would say they did it if they didn't think so." Juror 1-5 later reiterated his belief that an innocent person would not confess to a crime he did not commit:

> But I would say you know-- *and I'll clarify that-- they certainly would have been involved in it*. And I think your question was *would they agree to admitting to a crime that they did not commit and my answer to that would be no.*

(Emphases added).

Juror 1-5 unequivocally said he would be fair and impartial, but was not further questioned by the State or the trial court concerning his views on false confessions. Defense counsel challenged this juror for cause because he candidly expressed difficulty accepting false confessions for serious crimes and that a person who confessed was certainly involved in some way. The State responded that Juror 1-5's opinions were entirely reasonable and that his statements actually meant false confessions were extremely unlikely, not that they did not occur in serious cases. The trial court agreed with the State and denied the challenge for cause to Juror 1-5.

During the voir dire discussion, a second juror, Juror 3-7, was asked for his thoughts about false confessions. Juror 3-7 also found it hard to believe that a person would falsely admit to committing the charged crimes:

> Well, it-- *it's kind of hard for me to believe that someone would admit guilt to a crime of this nature if they were in fact innocent.* I mean *very unreasonable.* I mean anything's possible of course. *But something of this nature would just be very unreasonable for someone to admit guilt to.*

(Emphases added).

Defense counsel tried to decipher whether Juror 3-7 would be fair and impartial, and asked him if he would have difficulty accepting an involuntary confession theory. Juror 3-7 answered that he "would look at everything evenly and as fair as possible to make a fair decision." But when defense counsel inquired further as to whether Juror 3-7's position was that involuntary confessions were "possible" or "completely

2

unreasonable," Juror 3-7 responded, "It's possible. But a crime of this nature I mean *who would be crazy enough to admit guilt?*" (Emphasis added).

After Juror 3-7's comment, defense counsel asked if any other juror felt the same way, to which Juror 4-3 responded:

> What he's saying makes total sense. Okay? I mean the crime we're talking about the sexual crime that's-- that's talking about this situation with [Juror 3-7], I-- *I'm 100% on his side for that* because you would have to be mentally ill okay to-- to go to plead guilty to something like that because you have no sense of thought. *There's no there's no way anybody with common logic and sense would do something to uh-- to jeopardize their lives to commit a-- to admit they're guilty for something they didn't do.*

(Emphases added.)

Appellant also challenged Jurors 3-7 and 4-3 for cause arguing that, like Juror 1-5, both rejected the false confession defense as unreasonable while believing a person would have to be crazy to do so. The State argued that while a prospective juror may find such a defense "hard to believe," they are permitted to have whatever beliefs they want so long as they are able to keep an open mind and follow the evidence. The trial court recalled that Juror 3-7 specifically stated he would be as fair as possible and if he listened to the evidence fairly, there was no reasonable doubt as to his impartiality. However, defense counsel noted that Juror 3-7's reference to fairness needed to be considered in context of his candid disbelief of false confessions to serious crimes.

Ultimately, the trial court denied appellant's cause challenge to Juror 3-7, but granted appellant's challenge to Juror 4-3. After appellant exercised all his peremptory challenges, the trial court rejected appellant's request for additional peremptory challenges for each cause challenge the trial court previously denied.

During jury deliberations after trial, the jury submitted a note to the trial judge which read: "There is a request for a transcript of [minor victim]'s testimony. Is that something that can be provided?" The court informed the jury that the minor victim's testimony was recorded, the complete testimony was an hour and fifty-eight minutes long, and would take about thirty minutes to prepare on a disk. The judge then instructed the jury to return to the jury room and decide whether they wanted the

3

entire testimony played back, or only a narrowed portion. After some deliberation, the jury sent a second note: "We would like to see the first [twenty] minutes of [minor victim]'s testimony." Upon receiving the second request, the trial court immediately asked for the jury to be brought in and granted their request. Appellant objected to the jury only hearing direct examination testimony and requested that the jury also hear the relevant cross-examination testimony relating to the first twenty minutes of direct examination. The trial court overruled appellant's objection and played the first twenty minutes of the minor victim's direct testimony for the jury.

The jury returned a verdict of guilty to all seven counts against appellant. He was sentenced to life in prison followed by two consecutive thirty-year prison sentences. This appeal followed.

1. For Cause Challenges

"The standard of review of a trial court's ruling on a cause challenge is one of abuse of discretion. . . . Abuse of discretion occurs when the record reveals reason to doubt impartiality." *Ranglin v. State*, 55 So. 3d 744, 746 (Fla. 4th DCA 2011). Additionally, the failure to strike a juror for cause is not subject to a harmless error analysis. *See Bryant v. State*, 765 So. 2d 68, 69 (Fla. 4th DCA 2000).

A juror's expressions of doubt about an ability to decide the case impartially provides reasonable doubt about the juror's ability to decide the case solely on the evidence. *See Lowry v. State*, 963 So. 2d 321, 326-27 (Fla. 5th DCA 2007). "When a party seeks to strike a potential juror for cause, the trial court must allow the strike when there is basis for any reasonable doubt that the juror had 'that state of mind which would enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial.'" *Guardado v. State*, 176 So. 3d 886, 897 (Fla. 2015) (quoting *Carratelli v. State*, 961 So. 2d 312, 318 (Fla. 2007)).

Potential jurors who express significant reservations about their ability to be impartial should be excused for cause where their responses to attempts at rehabilitation are conditional or equivocal. *See Carratelli v. State*, 832 So. 2d 850, 855 (Fla. 4th DCA 2002). "A juror is not impartial when one side must overcome a preconceived opinion in order to prevail." *Reid v. State*, 972 So. 2d 298, 300 (Fla. 4th DCA 2008) (quoting *Hill v. State*, 477 So. 2d 553, 556 (Fla. 1985)). However, a juror who can lay aside any bias or prejudice, and render a verdict solely on the evidence presented and the instructions on the law given by the court, may be permitted to

serve on the case. *See Dorsett v. State*, 941 So. 2d 587, 588 (Fla. 4th DCA 2006).

Here, when defense counsel further inquired about Juror 1-5's beliefs, the juror explained that someone who confessed to a serious crime would have to have been involved in some way, thus implying that he already believed appellant was involved in the alleged offenses. As a result, Juror 1-5 should have been stricken for cause because of his preconceived beliefs regarding involuntary confessions.

In *Montozzi v. State*, 633 So. 2d 563, 565 (Fla. 4th DCA 1994), a prospective juror expressed disapproval of the kind of activity defendant was involved in based on her experiences. Following the State's attempt to rehabilitate the juror, the trial court attempted further rehabilitation, to which the juror responded that she "hoped" she could be fair and impartial, and equivocally agreed that she would be able to follow the law. *Id*. at 564-65. This court held, "While this is indeed an area of trial judge discretion, nevertheless we have ordered new trials ourselves where we were convinced of the existence of reasonable doubts." *Id*. at 565. "Qualified promises by a would-be juror to be fair and impartial are simply not enough to guarantee a fair trial, at least in the face of such prior testimony as this juror gave." *Id*. This court further reasoned:

> Few jurors would resolutely continue to admit that they have a bias after having a prosecutor and a trial judge cloak them in a duty to be fair. Some answers by prospective jurors should simply be deemed alone disqualifying, no matter how earnestly counsel and the trial judge seek to save them. In this case, the bell earlier rung by this juror was sounded again even while she was being "rehabilitated."

*Id*.

Like the facts in *Montozzi*, Juror 3-7 also candidly expressed difficulty accepting that a person accused of a serious crime would falsely admit guilt. He qualified his statement by saying he would be fair and impartial, but when subsequently asked about whether false confessions were possible, he admitted, "It's possible. But a crime of this nature I mean *who would be crazy enough to admit guilt?*" (Emphasis added). Even though Juror 3-7 unequivocally stated that he would be fair and impartial, his colloquy ended with a rhetorical question that reiterated his prior statements of potential bias. Accordingly, it was error to deny the cause strike against Juror 3-7 as well.

2. Testimony Read-Back

Trial courts have "wide latitude in the area of the reading of testimony to the jury" pursuant to Florida Rule of Criminal Procedure 3.410. *Avila v. State*, 781 So. 2d 413, 415 (Fla. 4th DCA 2001). As such, the standard of review for evaluating a trial court's decision regarding the read-back of requested testimony is abuse of discretion. *See Garcia v. State,* 644 So. 2d 59, 62 (Fla. 1994). This court and others have determined that a play-back of a portion of direct-examination, without the relevant cross-examination, can be error if doing so is misleading or emphasizes one party's version of events. *See Mullins v. State*, 78 So. 3d 704, 705 (Fla. 4th DCA 2012); *Gormady v. State*, 185 So. 3d 547, 551 (Fla. 2d DCA 2016).

In *Mullins*, the defendant claimed the trial court erred in allowing the jury to hear the play-back of specific direct-examination testimony by not replaying the cross-examination of the same subjects. 78 So. 3d at 705. The jury specifically asked for play-back of the testimony of two different witnesses relating to a specific event. *Id.* In response, the trial court replayed the relevant portions of the witnesses' testimony on direct examination, but did not replay the relevant cross-examination testimony. *Id.* This court found that the trial court erred and held that "the partial play-back served to emphasize a version of events favorable to the State and diminish a version favorable to the defense." *Id.* at 706.

Most recently in *Gormady*, the trial court improperly permitted the jury to cease the read-back of the investigating detective's testimony at any time. 185 So. 3d at 551. The Second District relied on *Mullins* to determine that allowing the jury to hear a partial read-back without hearing cross-examination testimony placed undue emphasis on and bolstered the State's version of events concerning the charged offenses. *Id.*

The rule expressed in both *Mullins* and *Gormady* provides that when a jury requests a play-back of testimony, the trial court must generally furnish both direct- and cross-examination testimony to the jury to ensure fairness when the portion of the testimony requested involves an essential element of any of the charged offenses. *See Mullins*, 78 So. 3d at 706; *Gormady*, 185 So. 3d at 551-52.

In this case, the play-back of the first twenty minutes of the minor victim's testimony exclusively supported the State's case against appellant. The failure to include in the play-back for the jury the cross-examination concerning the subjects discussed during the first twenty minutes of the victim's testimony resulted in unduly emphasizing the State's version of events.

6

Since the trial court failed to ascertain what specific subject matter the jury sought from the testimony, refusing to include the related cross-examination testimony was error. In so holding, we acknowledge a jury's practical ability to decide what evidence to focus on during its deliberations. The fact that this jury requested to rehear only a portion of a witness's direct testimony provides no reason to create a bright-line rule that in all cases a trial court is required to force-feed the jury a play-back of testimony it expressly deems unnecessary. However, given the lack of inquiry into the specifics of the testimony to be reheard, the court in this case erred by not requiring the jury to rehear the relevant cross-examination testimony without confirming that the jury had no need for it.

The State argues that the failure to play-back the victim's relevant cross-examination testimony was harmless error. The harmless error test requires the State "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict." *Ventura v. State*, 29 So. 3d 1086, 1089 (Fla. 2010) (quoting *State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986)). Because the first twenty minutes of the victim's direct testimony at trial introduced the only evidence of an incident that allegedly occurred before she was twelve, we conclude that the State has not met its burden to show that trial court's partial play-back was not harmful as to the charge of lewd or lascivious molestation of a child under the age of twelve.

In conclusion, we find that the trial court's failure to grant appellant's for cause challenges as to Jurors 1-5 and 3-7 denied him a fair trial. Moreover, we cannot say beyond a reasonable doubt that the trial court's partial play-back did not contribute to appellant's conviction for lewd or lascivious molestation of a child under the age of twelve. Therefore, we are compelled to reverse and remand for a new trial on all counts.

*Reversed and remanded for a new trial.*

CIKLIN and CONNER, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***

7