# Supreme Court of Florida

————————

No. SC12-1040
————————

**JESSE GUARDADO,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[April 16, 2015]

PER CURIAM.

This case is before the Court on appeal from an order denying a motion to vacate a judgment of conviction of first-degree murder and a sentence of death under Florida Rule of Criminal Procedure 3.851. The order concerns postconviction relief from a capital conviction for which a sentence of death was imposed, and this Court has jurisdiction of the appeal under article V, section 3(b)(1), Florida Constitution. Because Guardado has failed to show that counsel were ineffective at either the guilt or penalty phases of his trial, we affirm the denial of postconviction relief.

**FACTS**

This Court summarized the facts of this case in greater detail on direct appeal. The facts relevant here are as follows:

Guardado had known the victim of the present crimes, 75-year-old Jackie Malone, since 2003, and had rented places to live from her. Guardado had been a guest in her home, including a few overnight stays when he was between rentals. He received assistance from Ms. Malone on numerous occasions including financial assistance, and she had assisted him in getting the job with the local water treatment plant which he held at the time of the crime. Guardado knew certain things about Ms. Malone, including the fact that she kept some money on hand in her wallet.

On the day in question, September 13, 2004, Guardado wanted to get high and continue his recent crack cocaine binge. Desperate for money to fix his truck and obtain drugs, Guardado decided to rob a local grocery store. His attempted robbery with a knife was thwarted by one of the employees. Still desperate for money, Guardado decided to rob and murder Ms. Malone that night because she lived in a secluded area and because she would open her home to him based on their prior trusting relationship.

Guardado arranged to drive his girlfriend's vehicle to work for the night shift. He generally maintained a change of clothes in his girlfriend's car because of the nature of his work at the treatment plant. On this occasion he made sure there were clothes in the car because a hurricane was due to make landfall in a few days. In addition to leaving clothes in the car, Guardado armed himself with a metal "breaker bar." He next drove to the parking lot at the Wal-Mart in DeFuniak Springs, where he got a kitchen knife from his disabled truck that was parked there. With both weapons in his possession, he then drove his girlfriend's car to Ms. Malone's house.

Ms. Malone had already retired for the night so Guardado continually knocked on her door to awaken her. Guardado identified himself by name when she came to the door. She greeted Guardado, and he told her he needed to use the telephone. When she turned away to allow him to enter the house, he pulled the "breaker bar," which was hidden behind his back in his pants, and struck her repeatedly about her head. Ms. Malone raised her hands in defense, and then fell to the living room floor. Ms. Malone did not die from

the numerous blows with the "breaker bar," so Guardado pulled the kitchen knife and stabbed her several times, then slashed her throat.

Guardado said he hit her on the head with the "breaker bar" and thought that would have killed her, but it did not, so he hit her several more times. He also said that when she fell on the floor behind the couch it seemed she was not going to die so he stabbed her with the knife, including to the heart, so it would be over. However, Guardado confessed, "It just seemed not to go that way, she would not die." After beating and stabbing Ms. Malone, Guardado went to her bedroom, looked through her belongings for money and valuables, and took her jewelry box, briefcase, purse, and cell phone.

Guardado v. State, 965 So. 2d 108, 110-11 (Fla. 2007). Guardado was indicted on charges of first-degree murder and robbery with a weapon and pled guilty to both counts. Id. at 110. At the penalty phase, Guardado's attorneys, John Gontarek and Jason Cobb, presented two witnesses: Dr. James Larson, a clinical psychologist, and Guardado himself. At the conclusion of the penalty phase, the jury returned a unanimous recommendation of death. Id. at 111. The trial court sentenced Guardado to death, making the following findings as to the aggravating and mitigating circumstances:

The court found five aggravating factors: (1) the capital felony was committed by a person under sentence of imprisonment or on conditional release supervision; (2) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person (to wit: armed robbery, April 9, 1984; robbery with a deadly weapon, July 6, 1990; robbery, January 23, 1991; robbery with a weapon, January 23, 1991; attempted robbery with a deadly weapon, February 17, 2005); (3) the capital felony was committed while the defendant was engaged in the commission of, or attempt to commit, or escape after committing, a robbery with a weapon; (4) the capital felony was especially heinous, atrocious, or

- 3 -

cruel (HAC); and (5) the crime was committed in a cold, calculated and premeditated manner (CCP).

Guardado did not ask the trial court to consider any statutory mitigating circumstances, and the trial court did not find any. The trial court did find nineteen nonstatutory mitigating factors (ten as requested by Guardado, seven additional ones based upon review and consideration of the defense expert at the Spencer hearing, and two that were suggested by the State). [n.2] The trial court gave the jury's advisory sentence and recommendation great weight and considered and weighed the aggravating and mitigating circumstances. The trial court found, as did the jury, that the aggravating circumstances outweighed the mitigating circumstances.

> [N.2] The nonstatutory mitigating factors and the weight given by the trial court [were]: (1) defendant entered a plea of guilty to first-degree murder without asking for any plea bargain or other favor in exchange (great weight); (2) defendant has fully accepted responsibility for his actions and blames nobody else for this crime (great weight); (3) defendant is not a psychopath pursuant to expert testimony and would not be a danger to other inmates or correctional officers should he be given a life sentence (moderate weight); (4) defendant could contribute to an open prison population and work as a plumber or an expert in wastewater treatment plant operations should he be given a life sentence (little weight); (5) defendant fully cooperated with law enforcement to quickly resolve the case to the point of helping law enforcement officers recover evidence to be used against him at trial (great weight); (6) defendant has a good jail record while awaiting trial with not a single incident or discipline report (little weight); (7) defendant has consistently shown a great deal of remorse for his actions (great weight); (8) defendant has suffered most of his adult life with an addiction problem to crack cocaine which was the basis of his criminal actions (some weight); (9) defendant has a good family and a good family support system that could help him contribute to an open prison population (moderate weight); (10) defendant testified he would try to counsel other inmates

- 4 -

to take different paths than he has taken should he be given a life sentence (moderate weight); (11) as a child, defendant suffered a major trauma in his life by the crib death of a sibling (moderate weight); (12) as a child, defendant suffered another major trauma in his life by being sexually molested by a neighbor (moderate weight); (13) defendant has a lengthy history of substance abuse (marijuana and Quaaludes) during early teen years, graduating to alcohol and cocaine and substance abuse treatment beginning about age 14 or 15 (little weight); (14) defendant's biological father passed away before defendant developed any lasting memories of him (little weight); (15) defendant was raised by his mother, whom he always considered loving, thoughtful and concerned, and by a stepfather he later came to respect (little weight); (16) defendant was under emotional duress during the time frame of this crime (little weight); (17) defendant does not suffer a mental illness or major emotional disorder (little weight); (18) defendant offered to release his personal property, including his truck, to his girlfriend (little weight); and (19) defendant previously contributed to state prison facilities as a plumber and in wastewater treatment work (little weight).

Id. at 112-13. On direct appeal, Guardado claimed that the trial court erred in denying his request to discharge his court-appointed counsel and his motion to dismiss based on Ring v. Arizona, 536 U.S. 584 (2002), and that there was no competent, substantial evidence to establish the HAC or CCP aggravators. Guardado, 965 So. 2d at 113-18. This Court affirmed the convictions and sentences. Id. at 120.

Guardado filed his original rule 3.851 motion on October 15, 2008, but on

June 1, 2010, filed an amended motion, raising four claims[1] and adopting the appendix from his original motion. The State filed an answer on June 22, 2010. The trial court conducted the evidentiary hearing on November 21, 2011, and on March 30, 2012, denied all of Guardado's claims. Guardado appealed.

## ANALYSIS

To prevail on an ineffectiveness claim, a defendant must satisfy both prongs of the Strickland[2] test: (1) that counsel performed deficiently and (2) that such deficiency prejudiced the defendant. Lynch v. State, 2 So. 3d 47, 70 (Fla. 2008). Because both prongs must be demonstrated, a finding of deficient performance is not necessary where an ineffectiveness claim can instead be disposed of for a lack of prejudice. Strickland, 466 U.S. at 697. Furthermore, because the inquiry involves mixed questions of law and fact, we defer to the trial court's factual findings where supported by competent, substantial evidence, but review the court's legal conclusions de novo. Walker v. State, 88 So. 3d 128, 134 (Fla. 2012).

The proper standard for evaluating deficient performance is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. "[T]he

---

1. Guardado claimed ineffective assistance of counsel for failing to (1) protect his right to remain silent and right to counsel and to suppress inadmissible evidence; (2) ensure fair and impartial jurors; (3) call character witnesses during penalty phase; and (4) present available statutory mental health mitigation.

2. Strickland v. Washington, 466 U.S. 668, 687 (1984).

claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards." Walker, 88 So. 3d at 134 (quoting Bolin v. State, 41 So. 3d 151, 155 (Fla. 2010)).  In assessing counsel's performance, judicial scrutiny must be "highly deferential," and counsel is entitled to the strong presumption that his or her conduct "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Thus, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To establish prejudice, the defendant must show that without counsel's deficiency, there is a "reasonable probability" that the defendant would have received a different sentence.  Simmons v. State, 105 So. 3d 475, 503 (Fla. 2012). The deficiency must be demonstrated to have "so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined." Walker, 88 So. 3d at 134 (quoting Bolin, 41 So. 3d at 155); see also Strickland, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").  To determine reasonable probability, we must "consider the totality of the available mitigation evidence—both that adduced at trial, and . . . in the [postconviction] proceeding—and reweig[h] it against the

evidence in aggravation." Walker, 88 So. 3d at 138 (internal quotation marks omitted).

## I.  Reasonable Investigation into Mitigation

Guardado claims that his defense team provided ineffective assistance by failing to conduct a reasonable investigation into potential mitigation, or to present adequate mitigation, and by failing to expand that investigation when it became evident that such expansion was necessary. Guardado has several complaints regarding his counsel's mitigation investigation, but he fails to demonstrate or even argue deficiency or prejudice regarding them. Finding none upon our own review of the record, we summarily deny these claims and only address Guardado's claims that counsel failed to contact and present several potentially mitigating witnesses and failed to expand its investigation of possible mitigation when it became clear that such action was necessary.

## A.  Potential Mitigation Witnesses

"[A]n attorney has a strict duty to conduct a reasonable investigation of a defendant's background for possible mitigating evidence." State v. Riechmann, 777 So. 2d 342, 350 (Fla. 2000). The goal of such investigation is to discover all reasonably available evidence that could either be mitigating or instead rebut the aggravating evidence introduced by the State. Blackwood v. State, 946 So. 2d 960, 974 (Fla. 2006). Furthermore, the mitigation presented to the jury must focus on

the particularized characteristics of the defendant, so that the recommended sentence may be individualized based on those characteristics. Armstrong v. Dugger, 833 F.2d 1430, 1433 (11th Cir. 1987).

Guardado argues that counsel failed to conduct a reasonable investigation by failing to contact ten potentially mitigating witnesses.[3] Guardado claims that he was prejudiced by this alleged deficiency because these witnesses would have been able to present additional statutory mental health mitigation to the jury— specifically, that at the time of the homicide, Guardado was under the influence of extreme mental or emotional disturbance and that his mental illness was the result of years of chronic drug and alcohol abuse, neglect of his health, and failure to get treatment for his mental illness. Guardado also claims that this potential testimony would have captured his unique characteristics and humanized him to the jury.

The postconviction court found that Guardado was not entitled to relief on this claim. The court properly held that Guardado did not demonstrate deficiency or prejudice as to the first four witnesses because he did not provide any testimony from these witnesses at the evidentiary hearing. Regarding Warren, Porter, and Guardado's brother Bennie, Guardado provided only letters from these witnesses,

___

3. These witnesses were Tommy Lancaster, Mark Mestrovich, John Harris, and the custodian of records at OMI, Inc.; Guardado's sister (Linda Warren), brother (Bennie Guardado), and ex-girlfriend (Donna Porter); Major Rhodene Mathis; Elizabeth Darby Padgett; and Guardado's mother (Patsy Umlauf).

containing mostly background information about Guardado. The court found no deficiency because the letters did not establish that either of these three were available or willing to testify.[4] The postconviction court's findings are supported by competent, substantial evidence, and we agree that there was no deficiency or prejudice as to counsel's failure to contact these seven witnesses.

Major Rhodene Mathis is a retired prison warden who was a major at the prison while Guardado was there. The court found that her testimony at the evidentiary hearing[5] did "little, if anything, to provide mitigation evidence that could have been used by Defendant at the penalty phase." The court also found Mathis' testimony to be cumulative to the information already presented at the penalty phase. Thus, the court held that Guardado failed to demonstrate deficiency or prejudice. Our review of the record leads us to agree. We find that no deficiency or prejudice has been demonstrated.

---

4. The postconviction court acknowledged that the testimony of Guardado's mother, Patsy Umlauf, established that Linda Warren was present at the trial; however, it found that no evidence was presented regarding Warren's willingness to testify.

5. Mathis testified that she could not recall much about the defendant other than his name, that he worked off the prison grounds at a wastewater plant, and that he lived off the prison grounds at the forestry camp. Mathis also agreed with the prosecutor's statement at the evidentiary hearing that "if the court already knows that [Guardado] was incarcerated in the state prison system and that he learned to work in wastewater treatment plants . . . in prison and did so, there's not a whole lot you can add to what the Court already knows."

Elizabeth Padgett, Guardado's friend, testified that she met Guardado when he was dating a friend of hers (Donna Porter). Padgett testified that she had only known Guardado for about six to nine months. Guardado testified that he told his penalty phase counsel about Padgett. However, the postconviction court found that Guardado's testimony was not credible. The court concluded that counsel could not be found deficient "for failing to contact or investigate a witness of which they had no knowledge because of Defendant's own actions." The court also found that Padgett's testimony could have easily been discredited and was largely cumulative of Dr. Larson's and Guardado's testimony at the penalty phase.

The postconviction court's finding that Guardado's testimony was not credible is supported by competent, substantial evidence. Several times at the penalty phase and <u>Spencer</u> hearings, Guardado was asked whether he had anything else that he believed his counsel should present in mitigation. Each time, Guardado either informed the judge that he had "no knowledge of any further mitigation" that he could present or wavered regarding the issue, without ever indicating any additional mitigation. This behavior continued at the evidentiary hearing. As a result, the postconviction court's finding that Guardado's testimony was not credible is supported by competent, substantial evidence. Further, our review of the record confirms the postconviction court's determination that

Padgett's testimony would have been cumulative to that already presented. No deficiency has been demonstrated.

Finally, Guardado argues that his mother, Patsy Umlauf, should have been called as a witness or, in the alternative, that defense counsel should have read her letter to the jury at trial rather than just entering it as an exhibit. There was a dispute as to whether Umlauf refused to testify or was simply not contacted by defense counsel. In either event, Guardado is not entitled to relief because he has failed to demonstrate prejudice regarding his mother's potential oral or written testimony.

The postconviction court found that Umlauf's testimony at the evidentiary hearing "failed to establish detailed mitigation." In its order denying relief, the court said, "Umlauf basically testified that she believed Defendant's drug addiction and his inability to cope with life outside of prison led him to the murder." The court noted that although Umlauf testified that Guardado's brother and father had died while he was young—a fact that was not mentioned in her letter and thus, not presented at the penalty phase—she did not elaborate on the circumstances of these events or how they affected Guardado. The court found Umlauf's testimony to be "largely cumulative" and held that "[c]ounsel cannot be ineffective for failing to present cumulative evidence and testimony."

We agree with the postconviction court's finding of no prejudice from Umlauf not being called as a witness. We also find no prejudice from defense counsel's decision not to read Umlauf's letter to the jury. The letter substantively tracks much of the same information about which Umlauf testified at the evidentiary hearing. Although the jury did not hear about Guardado losing his father and brother at a young age, this fact does not establish prejudice because a claim of ineffective assistance "will not be sustained where the jury was aware of most aspects of the mitigation evidence that the defendant claims should have been presented." Troy v. State, 57 So. 3d 828, 835 (Fla. 2011). Therefore, we find that Guardado has not demonstrated prejudice regarding the failure to call his mother as a witness or read her letter to the jury and is not entitled to relief on his claim of unreasonable investigation into mitigation. A determination of deficient performance is unnecessary. Strickland, 466 U.S. at 697 (explaining that a finding of deficient performance is not necessary where an ineffectiveness claim can be disposed of instead for a lack of sufficient prejudice).

### B. Failure to Expand Investigation

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. This Court must determine whether a decision not to expand the investigation of

potential mitigation was reasonable under the circumstances. Cooper v. Sec'y, Dep't of Corr., 646 F.3d 1328, 1351 (11th Cir. 2011) ("The question under Strickland is whether . . . trial counsel conducted an adequate background investigation or reasonably decided to end the background investigation when [they] did." (internal quotation marks omitted)); see, e.g., Wiggins v. Smith, 539 U.S. 510, 524 (2003) ("Counsel's decision not to expand their investigation beyond the PSI and the DSS records fell short of the professional standards that prevailed in Maryland in 1989."); Strickland, 466 U.S. at 699 ("[T]he decision not to seek more character or psychological evidence than was already in hand was likewise reasonable.")

Guardado claims deficiency in that the report by the defense expert, Dr. Larson, failed to address his significant drug problem. Guardado relies on Cooper to argue that counsel should have expanded their investigation by inquiring as to why the report lacked information regarding his substance abuse issues or by instructing Dr. Larson to delve deeper into those issues. Otherwise, Guardado argues that counsel should have sought a more specialized expert in substance abuse addiction. He argues prejudice in that the jury did not hear mitigation related to his drug delirium, never heard that Guardado suffered from a mental illness, and never heard character testimony about Guardado—each of which

- 14 -

Guardado claims would have established a basis for the two statutory mental health mitigators.

The postconviction court found no deficiency because defense counsel did present Guardado's chronic alcohol and drug abuse issues at trial, although they were presented as nonstatutory instead of statutory mitigation. The court also found no prejudice because the testimony of the two experts presented at the evidentiary hearing mirrored the information presented to the jury through Dr. Larson's testimony at the penalty phase.

We agree with the postconviction court that Guardado is not entitled to relief on this claim. "Simply presenting the testimony of experts during the evidentiary hearing that are inconsistent with the mental health opinion of an expert retained by trial counsel does not rise to the level of prejudice necessary to warrant relief." Dufour v. State, 905 So. 2d 42, 58 (Fla. 2005). Yet, that is what Guardado did here. In fact, at the hearing, Guardado's postconviction counsel expressly asked each expert to agree or disagree with a conclusion or statement made by Dr. Larson at trial. A Strickland analysis does not consider "how present counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability of a different result." Brown v. State, 846 So. 2d 1114, 1121 (Fla. 2003) (internal quotation marks omitted); see, e.g., Dufour, 905 So. 2d at 56 (finding that "trial counsel was not ineffective simply because after

receiving an initial unfavorable report from Dr. Gutman they did not proceed further to seek additional experts for mental mitigation evidence").

Additionally, Guardado's reliance on Cooper is misplaced.  In that case, defense counsel hired an expert who could have testified regarding the child abuse the defendant had suffered at the hands of his father; however, counsel decided not to call the expert.  Cooper, 646 F.3d at 1352.  Instead, counsel relied on the testimony of the defendant's mother, who testified about the abuse she suffered at the hands of the defendant's father, which the defendant witnessed.  Id. at 1352-53.  The Eleventh Circuit Court of Appeals found that defense counsel's decision "to end the background investigation" was unreasonable because once they decided not to call their expert as a witness, "they did nothing further to develop background information to support their mitigation theory."  Id. at 1351-52.

Here, there was no need to develop additional background information to support the defense's mitigation theory.  There was no reason to doubt Dr. Larson's report, although it was not as favorable as the defense would have liked.  See, e.g., Dufour, 905 So. 2d at 56 ("Although counsel did not seek a second opinion, the record clearly reflects that counsel attempted to secure a mental health expert, had no reason to doubt that expert's negative conclusions, and made an informed decision not to present a mental health expert." (emphasis added)).  Unlike the expert in Cooper, the expert here, Dr. Larson, did testify.  This was not

a scenario where an expert who could provide mitigating testimony about the defendant was not called and counsel instead relied on one witness who did not provide specific details regarding mitigating information. Therefore, Guardado has failed to satisfy Strickland as to this claim.

## II. Voir Dire

Guardado presents two claims of ineffective assistance regarding voir dire. First, he claims that two prospective jurors, James Tucker and David Hebert, were improperly stricken for cause without proper objection from defense counsel.[6] Second, he argues that counsel improperly allowed three biased jurors—Pamela Pennington, Earl Hall, and William Cornelius—to sit on the jury without striking them. Each claim will be addressed in turn below.

### A. Prospective Jurors Improperly Stricken

The State argues that Guardado's claim regarding the prospective jurors is procedurally barred because it should have been raised on direct appeal. However, Guardado's claim is not that two qualified prospective jurors were improperly stricken. Rather, it is that penalty phase counsel were ineffective for failing to

---

6. Although Guardado's original and amended 3.851 motions alleged that three jurors were improperly stricken for cause, his initial brief explains that after reviewing the record, it is clear that the State used a peremptory strike, not a cause challenge, to remove prospective juror Theresa Clark. Guardado's initial brief also does not provide any arguments related to Theresa Clark. As such, we do not discuss that claim here.

object to the State's cause challenges of these jurors,[7] and such a claim is the proper subject of a rule 3.851 motion.

"The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984). "When a party seeks to strike a potential juror for cause, the trial court must allow the strike when 'there is basis for any reasonable doubt' that the juror had 'that state of mind which w[ould] enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial.' " Carratelli v. State, 961 So. 2d 312, 318 (Fla. 2007) (quoting Singer v. State, 109 So. 2d 7, 23-24 (Fla. 1959)). A trial court's finding that a cause challenge is proper will be sustained on appeal absent an abuse of discretion. Franqui v. State, 804 So. 2d 1185, 1191 (Fla. 2001).

**1. James Tucker**

Guardado claims that Mr. Tucker was erroneously stricken for cause because he never expressed anti-death penalty views that would prohibit his jury service. Guardado argues that the failure to properly object to the striking of this qualified

---

7. Chandler v. State, 848 So. 2d 1031, 1035 (Fla. 2003) (finding claim that jury was unfair or biased to be the underlying issue of an ineffective assistance of counsel claim).

juror is inherently prejudicial under <u>Davis v. Georgia</u>, 429 U.S. 122 (1976).

During voir dire, Mr. Tucker, a lawyer, confirmed that he was opposed to the death penalty for philosophical and personal reasons.  He confirmed that he would not be able to vote for the imposition of the death penalty in any case of first-degree murder in Florida.  The defense attempted to rehabilitate Mr. Tucker by asking if there were certain circumstances in which he could vote to impose the death penalty, but Mr. Tucker responded:

> Well, I've given a fair amount of thought and—and I believe most of the statutes the states have drafted, including Florida, raise significant issues both on the Fourth Amendment and Fourteenth Amendment due process.  I also think the way they implement it is not consistent. Therefore, in theory, you could come up with some possible justification for the death penalty laws.  I think that life without parole does cover, you know, most of the purposes of the criminal law in this context.

When asked again whether he could impose the death penalty, despite his personal feelings, in certain circumstances based on the law, the facts, and the judge's instructions, Mr. Tucker answered, "I'm sorry.  I don't think I could, under the Florida Statute."  He then confirmed to the court that he knew his responsibilities under the law and that his beliefs would substantially impair his ability to follow the law.

The State challenged Mr. Tucker for cause and, although defense counsel objected, the court granted the cause challenge.  In its postconviction order, the court held that Guardado was not entitled to relief on this claim:

- 19 -

The record refutes Defendant's claim that Mr. Tucker was improperly challenged for cause without proper objection. The record clearly shows that, after detailed inquiry, Mr. Tucker responded that his beliefs would substantially impair his ability to follow the law. Mr. Tucker did not merely voice general objections to the death penalty or express conscientious or religious scruples against its infliction, but rather responded that he would likely not be able to follow the law based upon his beliefs. The record indicates that Mr. Tucker was not improperly challenged for cause. Consequently, Defendant has failed to demonstrate that his counsel acted deficiently or that he was prejudiced as it appears the strike would have been properly granted. The Court's confidence in the outcome is not undermined.

We agree that Guardado is not entitled to relief.

While prospective jurors who voice general objections to the death penalty cannot be excluded from the jury on that basis, Witherspoon v. Illinois, 391 U.S. 510, 522 (1968), prospective jurors who cannot or will not follow the law as applied to the facts of a case can properly be challenged for cause, San Martin v. State, 717 So. 2d 462, 467 (Fla. 1998). Here, Mr. Tucker did not voice a general objection to the death penalty but instead stated firmly that he could not vote for the death penalty in Florida because of due process concerns and twice stated that his beliefs would substantially impair his ability to obey the law in this case. Thus, the trial court did not abuse its discretion in granting the State's cause challenge as to Mr. Tucker. Any objection by Guardado's counsel would have been meritless, and since "[c]ounsel cannot be deemed ineffective for failing to make a meritless

objection," <u>Hitchcock v. State</u>, 991 So. 2d 337, 361 (Fla. 2008), Guardado cannot prevail on this claim.

**2. David Hebert**[8]

Guardado also claims that prospective juror Hebert did not express anti-death penalty views sufficient to disqualify him from jury service and that the failure to object to the striking of this qualified juror is inherently prejudicial. <u>Davis</u>, 429 U.S. 122. During voir dire, Mr. Hebert expressed opposition to the death penalty based on his religious beliefs. Essentially, Mr. Hebert could not, in good conscience, say that he could follow the law. The State moved to strike Mr. Hebert for cause, stating, "And Mr. Hebert is obviously—due to his religious faith is the reason I would move to excuse him." Defense counsel did not object, and the court excused Mr. Hebert for cause. The postconviction court found that Mr. Hebert "could not assure the trial court that he would be able to set aside his religious faith and follow the law if he were seated as a juror in Defendant's case." The court stated that even though counsel did not object, "the record indicates that such objection would likely have been overruled." Thus, the court concluded that Guardado was not entitled to relief.

---

8. At times within the record, this prospective juror's surname is spelled "Herbert," but the voir dire transcript confirms the proper spelling as "Hebert."

"[I]t cannot be assumed that a juror who describes himself as having 'conscientious or religious scruples' against the infliction of the death penalty . . . [has] thereby affirmed that he could never vote in favor of it or that he would not consider doing so in the case before him." Witherspoon, 391 U.S. at 515 n.9 (citation omitted). However, if there is any reasonable doubt that a juror who is challenged for cause has the state of mind necessary to render an impartial verdict based on only the law and the evidence, the court must allow the strike. Carratelli, 961 So. 2d at 318. Also, a trial court's granting of a cause challenge will be sustained absent an abuse of discretion. Franqui, 804 So. 2d at 1191. Here, Mr. Hebert's equivocations did not assure the trial court of his ability to follow the law despite his religion. Thus, the court was reasonable in excusing Mr. Hebert for cause. As counsel cannot be ineffective for failing to make a meritless objection, Hitchcock, 991 So. 2d at 361, Guardado has failed to demonstrate ineffective assistance of counsel on this issue.

## B. Allegedly Biased Jurors

In a claim of ineffective assistance of counsel "for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased." Carratelli, 961 So. 2d at 324. "[A]ctual bias means bias-in-fact that would prevent service as an impartial juror." Id. Evidence of such bias "must be plain on the face of the record." Id.

Guardado argues that three jurors—Pamela Pennington, Earl Hall, and William Cornelius—were biased. Guardado alleged that juror Pennington should have been stricken because the victim had served as a realtor for Pennington's son and Pennington had met with and spoken to the victim in connection with that transaction over the course of several months. Guardado claims that juror Hall should have been stricken because (1) he was "strongly" in favor of the death penalty; (2) he knew three of the police officers who worked on the case; and (3) he noted positive feelings about the victim, whom some of his family members knew personally. Lastly, Guardado claims that juror Cornelius should have been stricken because his aunt and uncle were murdered approximately twenty-five years prior under circumstances similar to the murder in this case. None of these allegations demonstrate actual bias, and Guardado is not entitled to relief.

## CONCLUSION

Guardado has failed to demonstrate ineffective assistance of counsel as to any of his claims. Accordingly, we affirm the postconviction court's denial of relieve under rule 3.851.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

- 23 -

An Appeal from the Circuit Court in and for Walton County,
Kelvin Clyde Wells, Judge - Case No. 662004CF000903CFAXM

Clyde M. Taylor, Jr., and Clyde Montgomery Taylor, III of Taylor & Taylor, P.A.,
St. Augustine, Florida,

for Appellant

Pamela Jo Bondi, Attorney General, and Charmaine Millsaps, Assistant Attorney
General, Tallahassee, Florida,

for Appellee