# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**RUIBENS SALOMON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-0579

[April 30, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Barry M. Cohen, Judge; L.T. Case No. 2022CF000868AMB.

Antony P. Ryan, Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, Fourth District, and Richard G. Bartmon, Assistant Regional Counsel, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Luke R. Napodano, Senior Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Ruibens Salomon appeals his conviction and sentence rendered after a jury found him guilty of sexual battery on his minor biological daughter. Principally, Salomon argues the trial court erred in denying his cause challenge against a prospective juror ("Prospective Juror") who expressed his belief that a child "would speak more credibly and honestly than an adult." We agree and reverse. As to Salomon's remaining arguments on appeal, we summarily affirm without opinion.

## Background

During jury selection, defense counsel asked if prospective jurors would give more credibility to a child witness because the witness was a child. Prospective Juror raised his hand and the following exchange occurred:

> [Prospective Juror]: Yes. I just want to say *I believe a child*, you know, *would speak more credibly and honestly than an*

*adult*, which gives them time to think about much about what one is saying. A child would just naturally comes [sic] out and speak, you know, what they saw, what's on the mind or what is before them. So, you know, when I heard [another prospective juror's] statement, it brought me back to even some of my children and others that I know and things they say to me. It was naturally spoken and its true. I just want to pick that up.

[Defense counsel]: *So you would give a little bit more credibility to a witness if the witness is a child?*

[Prospective Juror]: *Absolutely.*

(Emphasis added).

In a prior exchange, Prospective Juror stated that there are two sides to a story, "[b]ut a child can be really telling you the truth and if you ignore that, then what happens? So we have to question that and go from there."

At jury selection, defense counsel challenged Prospective Juror for cause because "[h]e would give more credibility to the witness if the witness was a child." The State replied that Prospective Juror made a commonsense description because children have less of a filter than adults, but he did not mean that he would believe children over adults given all the facts. The trial court denied the cause challenge.

The defense later renewed the cause challenge against Prospective Juror. The trial court again denied the challenge, leading to the defense exercising a peremptory strike on Prospective Juror and requesting an additional peremptory strike because the defense identified another prospective juror whom it found objectionable. The trial court denied the request for an additional peremptory challenge, and the objectionable juror was seated on the jury.

The trial court observed that the defense had a continuing objection to the jury's composition. The defense renewed its objection prior to the jury being sworn.

Following a trial, the jury found Salomon guilty of sexual battery on a child, while in a familial or custodial position. The trial court adjudicated Salomon accordingly and sentenced him to 237 months in prison, with credit for time served. This appeal follows.

2

**Analysis**

"'The validity of a cause challenge is a mixed question of law and fact, on which a trial court's ruling will be overturned only for "manifest error,"' which 'is tantamount to an abuse of discretion.'" *Deviney v. State*, 322 So. 3d 563, 570 (Fla. 2021) (quoting *Johnson v. State*, 969 So. 2d 938, 946 (Fla. 2007)).

"The jury is an essential instrumentality—an appendage—of the court, the body ordained to pass upon guilt or innocence." *Matarranz v. State*, 133 So. 3d 473, 476–77 (Fla. 2013) (quoting *Sinclair v. United States*, 279 U.S. 749, 765 (1929)). "Consequently, a failure to ensure that our jury panels are comprised of only fair and impartial members renders suspect any verdict reached." *Id.* at 477.

A potential juror may be challenged for cause if "[t]he juror has a state of mind . . . that will prevent the juror from acting with impartiality." § 913.03(10), Fla. Stat. (2021).

> [I]f there is basis for any reasonable doubt as to any juror's possessing that state of mind which will enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial, he should be excused on motion of a party, or by the court on its own motion.

*Matarranz*, 133 So. 3d at 484 (alteration in original) (quoting *Singer v. State*, 109 So. 2d 7, 23–24 (Fla. 1959)).

"The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." *Guardado v. State*, 176 So. 3d 886, 897 (Fla. 2015) (quoting *Lusk v. State*, 446 So. 2d 1038, 1041 (Fla. 1984)).

**A. Preservation**

"[T]o preserve challenges for cause to prospective jurors, the defendant must 'object to the jurors, show that he or she has exhausted all peremptory challenges and requested more that were denied, and identify a specific juror that he or she would have excused if possible.'" *Matarranz*, 133 So. 3d at 482 (quoting *Kearse v. State*, 770 So. 2d 1119, 1128 (Fla. 2000)); *see also Trotter v. State*, 576 So. 2d 691, 693 (Fla. 1990). The defendant must also renew "the objection prior to the jury being sworn."

*Matarranz*, 133 So. 3d at 482 (quoting *Carratelli v. State*, 961 So. 2d 312, 318 (Fla. 2007)).

"As a general rule, denying a challenge for cause is not prejudicial if the objectionable juror does not serve and is not replaced by an objectionable juror." *Campbell v. State*, 241 So. 3d 877, 879 (Fla. 4th DCA 2018). "An objectionable juror 'must be an individual who actually sat on the jury and whom the defendant either challenged for cause or attempted to challenge peremptorily or otherwise objected to after his peremptory challenges had been exhausted.'" *Id.* (quoting *Croce v. State*, 60 So. 3d 582, 585 (Fla. 4th DCA 2011)).

Here, Salomon properly preserved his cause challenge by moving to strike Prospective Juror, exercising a peremptory challenge on Prospective Juror, exhausting all peremptory challenges, requesting an additional peremptory strike, and identifying an objectionable juror whom he would have excused. The trial court denied the request for an additional peremptory strike and recognized Salomon's continuing objection to the jury's composition. Thus, Salomon properly renewed his objection before the panel was sworn.

## B. *Campbell v. State*

We addressed a situation very similar to the instant case in *Campbell.* There, one potential juror, a social worker who dealt professionally with pedophile cases, was asked in voir dire how she assessed the credibility of child witnesses. 241 So. 3d at 878. She responded that her "experience has been that kids don't lie in instances of child abuse and child sexual abuse." *Id.* (emphasis removed). The trial court attempted to rehabilitate the juror, advising her that "jurors are not supposed to imprint their experience on jury instructions or the law." *Id.* at 878–79. Such rehabilitation was to no avail, however, because the potential juror later stated that "she strongly agreed that children never lie about sexual abuse and rated the strength of her opinion as a 'nine out of ten, 9.5.'" *Id.* at 879.

The defense attempted to challenge the potential juror for cause, but the trial court denied the request, explaining it had rehabilitated the jury pool. *Id.* The defense ultimately used a peremptory challenge on the potential juror and requested an additional peremptory challenge against a specifically identified objectionable juror, in place of the denied cause challenge. *Id.* The trial court denied this request, too. *Id.*

4

We held that the trial court erred in denying the cause challenge to the social worker because she could not be impartial, even after rehabilitation. *Id.* at 880. Accordingly, we remanded the case for a new trial because the defense had specifically identified an objectionable juror who would have been stricken using the additional peremptory challenge when the cause challenge was improperly denied. *Id.*

## C. Application of legal precedent to the instant case

"[T]he trial court has a unique vantage point in the determination of juror bias . . . [and] is able to see the jurors' voir dire responses and make observations which simply cannot be discerned from an appellate record." *Deviney*, 322 So. 3d at 570–71 (second and third alterations in original) (quoting *Ault v. State*, 866 So. 2d 674, 683–84 (Fla. 2003)). "Therefore, '[t]he decision to deny a challenge for cause will be upheld on appeal if there is competent record support for the decision.'" *Id.* at 571 (alteration in original) (quoting *Barnhill v. State*, 834 So. 2d 836, 844 (Fla. 2002)). "There is hardly any area of the law in which the trial judge is given more discretion than in ruling on challenges of jurors for cause." *Cook v. State*, 542 So. 2d 964, 969 (Fla. 1989).

Nonetheless, this Court has "consistently held that close cases should be resolved in favor of excusing the juror." *Bell v. State*, 870 So. 2d 893, 895 (Fla. 4th DCA 2004); *Vega v. State*, 182 So. 3d 848, 850 (Fla. 4th DCA 2016). A prospective juror's reasonable doubt as to whether he could render a fair and impartial verdict "should [be] resolved in favor of granting [the] cause challenge." *Burgess v. State*, 248 So. 3d 131, 134 (Fla. 4th DCA 2018).

As in *Campbell*, the potential juror at issue in the instant case expressed his belief that a child "would speak more credibly and honestly than an adult." When asked whether he would give a little bit more credibility to a witness if the witness was a child, Prospective Juror responded, "[a]bsolutely." "[A] juror is not impartial when one side must overcome a preconceived opinion in order to prevail." *Rentas v. State*, 237 So. 3d 368, 372 (Fla. 4th DCA 2018) (quoting *Reid v. State*, 972 So. 2d 298, 300 (Fla. 4th DCA 2008)). "[T]he mind of the proposed juror should not contain any element of prejudice for or against either party in a cause to be tried before him." *Matarranz*, 133 So. 3d at 484.

In the instant case, per Prospective Juror's statements regarding the reliability of children's testimony ("I believe a child . . . would speak more credibly and honestly than an adult"), a reasonable doubt exists that Prospective Juror could render an impartial verdict against Salomon

because he would have given more credibility to the child Victim than the adult defendant. *See Matarranz*, 133 So. 3d at 484; § 913.03(10), Fla. Stat. (2021).

"Procedurally, when a prospective juror's answers suggest incompetency to be a juror, rehabilitation is generally the proper next step." *Sears v. State*, 307 So. 3d 746, 751 (Fla. 4th DCA 2020); *see also Rentas*, 237 So. 3d at 372 ("[A] juror who can lay aside any bias or prejudice, and render a verdict solely on the evidence presented and the instructions on the law given by the court, may be permitted to serve on the case."); *Matarranz*, 133 So. 3d at 486 ("Concerns that stem from misinformation and confusion concerning the law or process are ripe for discussion and redress through rehabilitation."). Here, the trial court did not rehabilitate or even attempt to rehabilitate Prospective Juror.

As detailed above, Salomon has established that the trial court's rulings at issue were prejudicial as "[a] court errs when it 'force[s] a party to exhaust his peremptory challenges on persons who should have been excused for cause. . . .'" *Matarranz*, 133 So. 3d at 482 (alteration and omission in original) (quoting *Leon v. State*, 396 So. 2d 203, 205 (Fla. 3d DCA 1981)).

**D. The failure to strike a juror for cause in criminal cases is per se reversible error**

Our supreme court has commanded and adhered to the rule that "it is reversible error for a court to force a party to use peremptory challenges on persons who should have been excused for cause, provided the party subsequently exhausts all of his or her peremptory challenges and an additional challenge is sought and denied." *Hill v. State*, 477 So. 2d 553, 556 (Fla. 1985); *accord Matarranz*, 133 So. 3d at 483; *Kopsho v. State*, 959 So. 2d 168, 173 (Fla. 2007); *Busby v. State*, 894 So. 2d 88, 96–97 (Fla. 2004); *Trotter*, 576 So. 2d at 693, 693 n.6. To this day, the supreme court has not permitted a harmless error standard to apply to the failure to strike a juror in the criminal context.

As the dissent correctly notes, the Florida supreme court recently applied the harmless error standard articulated in *Special v. West Boca Medical Center*, 160 So. 3d 1251 (Fla. 2014), to the erroneous denial of a cause strike, but it did so *only* in the civil context. *See Seadler v. Marina Bay Resort Condo. Ass'n*, 376 So. 3d 659, 664–65 (Fla. 2023). In *Seadler*, the court held, "harmless error is the appropriate standard for reviewing the erroneous denial of a properly preserved cause challenge." *Id.* at 665. But the court recognized that because its "analysis in the criminal context

6

has specifically relied on the rights of criminal defendants, we consider the issue presented here one of first impression and *limit our holding to civil cases.*" *Id.* (emphasis added). The court also opined that its "precedent regarding the effect of erroneously denied cause challenges in criminal cases does not apply with equal force in civil cases." *Id.* at 664.

Interestingly, *Seadler* concluded that the trial court error in that case was *not harmless*:

> Florida Rule of Civil Procedure 1.431(d) entitles parties to peremptory challenges and is structured to establish parity as to the number of peremptory challenges granted to each side of a case. Because of established precedent relating to preservation of error, the erroneous denial of a cause challenge necessarily results in the loss of one of these peremptory challenges. Here, had Seadler not expended the peremptory challenge on Juror 16, his claim of error would have been barred from review. Because he was forced to use the peremptory challenge in this manner, he therefore lacked the ability to strike Juror 22. And Marina Bay cannot, and has not attempted to, demonstrate there is no reasonable possibility that Juror 22 did not contribute to the verdict. Its theory to the contrary is predicated on its argument that jurors are fungible (i.e., that there is no difference between the subjectively objectionable Jurors 12 and 22) and does not account for the tactical latitude afforded to parties in exercising peremptory challenges.
>
> For this reason, under the facts of this case, we cannot say beyond a reasonable doubt that the loss of a peremptory challenge did not contribute to the verdict. Thus, applying the appropriate harmless error standard, Seadler is entitled to a new trial, and we quash the First District's opinion holding to the contrary.

*Seadler*, 376 So. 3d at 666.

## Conclusion

The dissent maintains "'harmless error is the appropriate standard' for determining whether 'the erroneous denial of a properly preserved cause challenge' requires reversal" in both criminal and civil cases. This sentiment may be in line with Blackstone's eighteenth-century commentaries, but it is inapposite to recent Florida supreme court rulings

clearly to the contrary. We are bound to apply the express holdings of the supreme court, not Blackstone. *See State v. Morris*, 297 So. 3d 594, 597 (Fla. 4th DCA 2020) ("We cannot overlook the rulings of the supreme court and are required by the rule of law to abide by its holdings."); *Felder v. King Motor Co. of S. Fla.*, 110 So. 3d 105, 108 (Fla. 4th DCA 2013) ("It is axiomatic that stare decisis obligates this court to follow Florida Supreme Court precedent." (citation omitted)).

Here, we cannot conclude that Salomon was judged by a fair and impartial panel of his peers based on Prospective Juror's responses during voir dire, which started a chain of events necessitating the defense's use of a peremptory challenge that would otherwise have been utilized to remove another juror whom the defense found objectionable. Because "[t]he failure to strike a juror for cause is not subject to a harmless error analysis," we reverse the judgment and sentence imposed and remand for a new trial. *Campbell*, 241 So. 3d at 879.

*Reversed and remanded.*

KLINGENSMITH, C.J., concurs.
ARTAU, J., dissents with opinion.

ARTAU, J., dissenting.

I respectfully dissent because, in my view, the "per se" error rule first established by *Trotter v. State*, 576 So. 2d 691 (Fla. 1990), which this court followed in *Campbell v. State*, 241 So. 3d 877, 879-80 (Fla. 4th DCA 2018), and the majority now applies in this case, cannot be squared with either the English common law origins of the peremptory challenge or our supreme court's holding in *Seadler v. Marina Bay Resort Condominium Association, Inc.*, 376 So. 3d 659, 665 (Fla. 2023), that "harmless error is the appropriate standard" for determining whether "the erroneous denial of a properly preserved cause challenge" requires reversal. While *Seadler* limited its holding to civil cases, its reasoning should be applied to the erroneous denial of a cause challenge in a criminal case where a court's denial of a defendant's cause challenge does not result in a legally objectionable juror.

"The peremptory challenge has very old credentials." *Busby v. State*, 894 So. 2d 88, 97 (Fla. 2004) (quoting *Swain v. Alabama*, 380 U.S. 202, 212 (1965), *overruled by Batson v. Kentucky*, 476 U.S. 79 (1986)). In fact, cause and peremptory challenges both have their roots in English common law. *See* 4 William Blackstone, *Commentaries* *346-47 (discussing the use of both cause and peremptory challenges); *see also Busby*, 894 So. 2d at

97-98 ("The right to peremptory challenges became the settled law of England in the middle ages[.]").

At common law, both the Crown and the criminal defendant could exercise an unlimited number of cause challenges against potential jurors who were unqualified, including those lacking in impartiality. *See* 4 William Blackstone, *Commentaries* \*346 (expounding upon the requirements of jurors, including that of impartiality, and stating that "challenges for cause . . . may be without stint in both criminal and civil trials"). But only the criminal defendant could exercise peremptory challenges, with the Crown being denied any such corresponding right. *See id.* at \*346-47 (explaining that "the prisoner" was allowed "a certain number" of "an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all," known as "a peremptory challenge," with such privilege being "denied to the king by statute").

However, even at common law, it was recognized that "[t]he peremptory challenges of the prisoner must . . . have some reasonable boundary[,]" which was initially set at "the number of thirty five." *Id.* at \*347. The number of permissible peremptory challenges in a criminal case was later reduced by statute to no more than twenty. *Id.* at \*348. Even then, if a criminal defendant attempted to use a twenty-first peremptory challenge, such challenge was merely "disregarded and overruled." *Id.* Thus, under both English common and statutory law, a criminal defendant could *never* exercise more peremptory challenges than he or she was allotted by law.

Peremptory challenges were also historically regarded as a means "to correct judicial error" on the question "of juror-bias"—that is, the erroneous denial of cause challenges—"when there was *no appeal* from a criminal conviction[.]" *United States v. Martinez-Salazar*, 528 U.S. 304, 319 (2000) (Scalia, J., concurring in judgment) (citing *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 335-36 (1904)). In other words, "if the defendant did not correct the error by using one of his peremptories, the error would not be corrected at all." *Id.*; *see also Busby*, 894 So. 2d at 112 (Bell, J., concurring in part and dissenting in part) (noting "the historical fact that correcting judicial errors 'on the spot' is a primary reason peremptories were originally granted to parties"). But "the institution of appeals" did not "exempt[] defendants from using peremptories for this original purpose, thereby giving them (in effect) additional challenges." *Martinez-Salazar*, 528 U.S. at 319 (Scalia, J., concurring in judgment); *see also* Amicus Brief of the State of Florida in Support of Respondent at 9, *Seadler v. Marina Bay Resort Condo. Ass'n, Inc.*, 376 So. 3d 659 (Fla. 2023) (No. SC2022-0984) (Because peremptory challenges "cure what [a party]

believe[s] to be the erroneous denial of a cause challenge[,]" they "enable [a party] to cure jury-selection errors before those errors poison the verdict, thus avoiding the need for costly retrials." (first citing *Busby*, 894 So. 2d at 96-97; and then citing *Skilling v. United States*, 561 U.S. 358, 395 n.31 (2010))).

"[I]n Florida, the use of peremptory challenges in criminal trials is a statutory creation." *Deviney v. State*, 322 So. 3d 563, 584 (Fla. 2021) (Lawson, J., concurring in part and concurring in result); *see* § 913.08, Fla. Stat. (2021) (establishing a statutory right to peremptory challenges in criminal cases); *see also* Fla. R. Crim. P. 3.350(e) (providing that a "trial judge may exercise discretion to allow additional peremptory challenges when appropriate."). As such, "the loss of a peremptory challenge, *without more*, does not violate the right to an impartial jury." *Busby*, 894 So. 2d at 102 (majority opinion) (emphasis added).

But as the majority points out, *Trotter*'s "per se" error rule established that the "expenditure of a peremptory challenge to cure [a] trial court's improper denial of a cause challenge constitutes reversible error if a defendant exhausts all remaining peremptory challenges and can show that an objectionable juror has served on the jury" because of the trial court's refusal to grant "the same number of additional peremptories as cause challenges that were erroneously denied." *Busby*, 894 So. 2d at 96-97 (majority opinion) (citing *Trotter*).

"Under *Trotter*, however, 'objectionable' does not mean legally objectionable—a juror who is biased or partial." *Deviney*, 322 So. 3d at 585 (Lawson, J., concurring in part and concurring in result). Instead, as our supreme court explained in *Trotter*, the juror whom the defendant specifically identifies as being the one whom the defendant "otherwise would have struck peremptorily," if the request for additional peremptories had been granted, need only be someone whom "the defendant either challenged for cause or attempted to challenge peremptorily or otherwise objected to after his [or her] peremptory challenges [were] exhausted." *Trotter*, 576 So. 2d at 693. That is, "[u]nder this standard, a defendant could object to a clearly neutral or even a defense-friendly juror and still be entitled to a new trial." *Busby*, 894 So. 2d at 109 (Bell, J., concurring in part and dissenting in part); *see also Deviney*, 322 So. 3d at 578 (Lawson, J., joined by Canady, C.J., and Grosshans, J., concurring in part and concurring in result) (observing that "*Trotter*'s per se rule is clearly erroneous" as it is inconsistent "with the harmless error standard set forth in section 924.33, Florida Statutes," and "thoroughly examined" in *DiGuilio*).

Indeed, per se reversal for an error in denying a peremptory strike would seemingly conflict with our Legislature's directive to limit reversals to "error that [has] injuriously affected the substantial rights of the appellant" or has "resulted in a miscarriage of justice." § 924.33, Fla. Stat. (2021) ("No judgment" in a criminal case "shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant," and mandating that "[i]t shall not be presumed that error injuriously affected the substantial rights of the appellant"); § 59.041, Fla. Stat. (2021) ("No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, . . . unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice.").

Moreover, the United States Supreme Court has held that if a criminal defendant "elects to cure" a trial court's erroneous denial of a cause challenge "by exercising a peremptory challenge," and that defendant "is subsequently convicted by a jury on which no biased juror sat," no deprivation "of any rule-based or constitutional right" can be shown. *Martinez-Salazar,* 528 U.S. at 307 (majority opinion); *see also Ross v. Oklahoma,* 487 U.S. 81, 88 (1988) ("[W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury" because such challenges are simply "a means to achieve the end of an impartial jury," meaning that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.").

In *Seadler,* our supreme court held, as previously noted, "that harmless error is the appropriate standard for reviewing the erroneous denial of a properly preserved cause challenge" *in civil cases.* 376 So. 3d at 665 ("[W]e cannot say that the erroneous denial of a cause challenge is always harmful[.]"). In reaching this holding, our supreme court explained, with reference to its prior decision in the criminal case of *Davis v. State,* 347 So. 3d 315 (Fla. 2022), that "in determining whether a 'per se' or a harmless error standard applies," the default position must always be "to the harmless error test, reserving the 'per se' rule 'only for those errors that always vitiate the right to a fair trial and therefore are always harmful.'" *Seadler,* 376 So. 3d at 665 (quoting *Davis,* 347 So. 3d at 323).

As our supreme court explained in *Seadler,* "rather than reflexively reversing in every case that presents this type of error," appellate courts *in civil cases* are now required to apply "a fact-specific harmless error

11

analysis" when determining whether reversal based on the erroneous denial of a cause challenge is required. *Id.* at 667. In so doing, the supreme court declined to "align itself" *in the civil context* with those "federal courts and other state courts that have concluded that any error in denying a cause challenge is cured, and therefore not reversible error," simply because "a party removes the juror utilizing a peremptory challenge." *Id.* Our supreme court reasoned that "[n]either the federal courts nor the other state courts adopting that standard apply both Florida's unique preservation rules in this context and our harmless error standard as announced in *Special* [*v. West Boca Medical Center*, 160 So. 3d 1251 (Fla. 2014)]." *Seadler*, 376 So. 3d at 667.

In *Special*, our supreme adopted a unique harmless error standard for use in civil appeals that, while based on the harmless error standard applicable in criminal cases as stated in *State v. DiGuilio*, 491 So. 2d 1129 (Fla. 1986), was slightly modified for use "in the civil context." *Special*, 160 So. 3d at 1256. Under this modified harmless error standard, "the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict," or, "[a]lternatively stated, the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict." *Id.* This standard differs from the harmless error test employed in federal court where "the party that 'seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.'" *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943)).

But *in the criminal context*, there is no difference between Florida's harmless error standard, the federal harmless error standard, and the common law harmless error standard. *Compare Chapman v. California*, 386 U.S. 18, 24 (1967) (adopting "the original common-law harmless-error rule [that] put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment"), *with DiGuilio*, 491 So. 2d at 1135 ("The harmless error test, *as set forth in Chapman and* [*its*] *progeny*, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." (emphasis added)).

Thus, I dissent from the majority's application of a "per se" error rule here without certifying its application to our supreme court as being a question of great public importance. Accordingly, I would certify the following question as one of great public importance:

Whether the "per se" error rule first established in *Trotter v. State*, 576 So. 2d 691 (Fla. 1990), and applicable when a criminal defendant requests and is denied an additional peremptory strike after using such a challenge to cure an alleged erroneous cause challenge denial, requires reversal even if the denial of the cause challenge and denial of the additional peremptory strike is harmless or does not result in a legally objectionable juror that is biased or prejudiced serving on the defendant's jury.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***